# REPORTS

OF

## CASES ARGUED AND DETERMINED

## JANUARY TERM, 1846.

---

## THE STATE v. BROOKS.

1. The tenth chapter of the penal code provides the manner by which grand jurors shall be constituted, and one constituted in any other mode has no legal warrant. When, however, the board of officers intrusted with the selection of the jury, has made the necessary certificate, there is no mode by which its action can be collaterally called in question or re-examined.

2. Although the board is limited to the selection of individuals who are house-holders and free-holders, and of integrity for character and sound judgment, and cannot lawfully select individuals of various specified avocations, professions and callings, yet the selection of those will not vitiate an indictment found by a jury of which they are members.

3. Under the code, a challenge to the array, or a plea in abatement to the panel, invokes the enquiry only, whetuer the jury has been selected in the mode directed, and on such issue, the certificate of the board is conclusive.

4. This certificate may be made by the attending officers, or the clerk of the county court, when one ef them:

5. When the matter of a plea in abatement is the *disqualification* of a juror, laying out of view the direction to summon free-holders and house-holders, as to which no opinion is given—it must present the constitutional disqualification of conviction for bribery, &c. &c. Matters which exempt individuals from jury service, are not disqualifications which will abate an indictment.

6. The code provides, that a grand jury may be summoned by the Court when none is in attendance under the *venire*, and when a jury is thus constituted, the accused is not invested with the right to enquire if the form prescribed by the statute has been pursued or otherwise.

7. In pleas of abatement to the constitution of the grand jury, the greatest accuracy and precision are necessary, as two modes are provided by which a jury may be constituted, and therefore, the plea must negative that either mode was pursued.

8. The essential matters to constitute a grand jury, when constituted by the board of county officers, seems to be, that they shall *select* the jury from the citizens at large, out of a list *biennially* obtained by the sheriff. Every matter beyond this seems nothing more than direction as to the manner in which the officers shall perform their duties.

9. In all pleas in abatement of indictments, it is essential that the facts should be stated out of which the defence arises, or a negative of the facts, which are presumed from the existence of a record.

On points reserved by the Circuit Court of Mobile, as novel and difficult.

THE defendant was convicted at the Circuit Court of Mobile, upon a charge of betting upon an unlawful gaming table. He pleaded several pleas in abatement of the indictment ; to all which the State demurred, and had judgment of *respondeas ouster* on the demurrer. The matters of defence asserted by these pleas, present the questions reserved for the decision of this Court, and are as follows, to-wit :

1. That the clerk of the Court did not, in the body of the writ of *venire facias*, recite at length, the names, places of residence, and occupations of the several persons named therein, and directed to be summoned as grand jurors.

2. That the indictment was not preferred to, nor enquired of, and a true bill found thereon by, a grand jury of good and lawful men, free-holders and house-holders, selected, summoned, and returned agreeably to law.

3. The same general allegations as the second, with the specification in this, to-wit, that F. S., one of the grand jurors by whom the indictment was found, was, at the time when he was selected, and his name returned to the clerk of the Circuit Court by the sheriff of Mobile county, a member

of an incorporated fire company of said county, to-wit, of the Franklin Fire Company, No. 3, of the city of Mobile, incorporated by an act of the General Assembly of the State of Alabama, approved 9th December, 1841.

4. The same general allegations, with the specification in this, to-wit : That the grand jury was not composed of persons selected from a list of free-holders and house-holders of said county of Mobile, obtained by the sheriff of said county, and returned by him to the clerk of the County Court, on the 7th day of May, 1842.

5. That R. L. W., who was one of the grand jury by whom the indictment was found, and who was impannelled to supply the place of one of the original *venire* of grand jurors who was absent, and not summoned as one of the grand jurors, as the law directs, in this, that the said R. L. W. was not summoned and drawn according to the sixteenth and seventeenth sections of the tenth chaptor of the penal code.

6. That R. L. W., one of the grand jurors, &c., was not one of the jurors selected from the list of free-holders and house-holders, and summoned by the sheriff, nor was his name contained in the *venire facias* returned into Court ; nor was he summoned, and his name drawn, in pursuance of any order of the Court; made in consequence of the absence of any of the jurors mentioned in the *venire facias*.

7. That the grand jury by whom, &c., was not selected from a list of free-holders and house-holders obtained by the sheriff of said county of Mobile.

8. The grand jury by whom, &c., was composed of persons whose names were drawn without a previous selection of persons qualified to serve as jurors, having been made from the list of free-holders and house-holders of said county of Mobile, obtained by the sheriff of said county.

9. That no selection of persons qualified to serve as grand jurors, was made, as required by law, from the list of free-holders and householders of said county of Mobile, obtained by the sheriff of Mobile county.

10. That the names of the persons composing the grand jury, by whom, &c., were not drawn by the clerk of the County Court of said county of Mobile.

11. That the minute of the drawing of the grand jury, by

whom, &c., was not signed by the clerk of the County Court and the attesting officers, nor was the same filed in the office of the clerk of the County Court.

12. That the list of the drawing of the grand jury, by whom, &c. was not made and certified by the attending officers and the clerk of the County Court.

HOPKINS and PHILLIPS, for the defendant, insisted that all the pleas were good. The general principle asserted is, that the grand jury must be constituted in strict conformity to the statute, and if otherwise, a party indicted may plead in abatement. By the express terms of the statute, exclusion from the jury is the consequence of what otherwise would be considered as a privilege of exemption; and the form and manner of constituting the lists from which the jury is to be obtained, is made matter of substance. [Clay's Dig. 451, § 5. 456, § 35; 452, § 10; 453, § 16, 17.] Independent of the peculiar terms of the statute, repeated decisions have established that the grand jury shall be obtained in the mode directed by the statutes, and one formed in any other manner is illegal. [State v. Williams, 5 Porter, 135; The State v. Middleton, ib. 495—v. Lyon, 7 ib. 167—v. Clarkson, 3 Ala. Rep. 378.]

THE ATTORNEY-GENERAL, contra, urged, that the statute ought to receive a reasonable construction; for it could not be supposed that the Legislature ever contemplated that the shaking of the box, or writing off the list in a fair hand should ever be made the subject of examination at the instance of one indicted; yet these matters are as much matters of substance as many of those urged by the pleas. It is true the jury is to be selected in the manner required; but it is unimportant to one indicted, whether the list was returned, or the names written out at full length. The action of the persons to whom the arrangement of the lists and the drawing of the jurors is confided, is conclusive, and cannot be collaterally impeached. [State v. Clarkson, 3 Ala. Rep. 378.]

GOLDTHWAITE, J.—1. One object of the sixteenth chapter of the penal code is to provide a select class of indivi-

duals to serve as grand and petit jurors, instead of permitting them to be constituted, as well as summoned, at the discretion of the sheriff, or other executive officer of the law, from the citizens of the county generally, and at large. The selection of this class of individuals is confided to a board composed of the clerk and officers of the county, and that is invested with large discretionary powers in regard to the selection and rejection of individuals who, of the free-holders and house-holders of the county first ascertained by the sheriff, are to discharge the responsible duties of jurors.

It does not admit of question, that a grand jury constituted in any other manner than is prescribed by this chapter, is without a legal warrant. [State v. Williams, 5 Porter, 135.] The board thus constituted is required to perform its .duties in a particular manner, but is entirely independent of any supervision or control ; its action by the eighth paragraph of the ninth section is to be ascertained and made known by means of the certificate of the officers who compose it ; when this certificate is made, its functions cease for the time, and there seems to be no mode by which its action upon the matters confided to it can be collaterally called in 'question or re-examined. The jurors then selected, are ascertained from the certificate of the board, which, in effect, is the same as a commission emanating from a proper source.

It is not a question now to decide, whether fraud, mistakes, or irregularities, committed by this board, cannot be enquired into, and its action set aside by the Court previous to the organization of the grand jury, even though the proper certificate may be produced ; but we think no such enquiry can be made at the instance of one indicted, so as to affect the prosecution. The jurors when once selected and certified, seem to stand in the same condition as any other *de facto* functionaries, whose acts will not be vitiated, although they may afterwards be set aside as having had no right in the first instance to exercise the function.

2. It is urged, however, that this board is limited to the selection of individuals who are house-holders or free-holders, and of integrity for character and sound judgment, and that besides some grounds for positive exclusion, it cannot lawfully select any individual of the various professions, avoca-

tions and callings, which are exempted from the duties of jurors.   It does not seem to be a consequence of the selection of one or more of those exempted persons, that an indictment found by a grand jury, of which they are members, should be abated, whether the exempts are placed on the jury list through accident, ignorance or design ; because, though the privilege of exemption is conferred upon the individual, he is not disqualified so as to be incapable of discharging the duties required of a juror.  · The sentence at the end of the fifth section, providing that such exempted persons shall be excluded from serving on juries, unless by the consent of both parties, evidently applies alone to petit jurors ; for consent can be given only when parties are ascertained, and not before the trial.

It must be conceded, this sentence seems to conflict in some degree with the sense of what precedes it ; but it cannot control the construction called for by the otherwise apparent object and intention of the chapter.   In point of fact, this sentence was not in the code as submitted to the Legislature, but was adopted afterwards, as an amendment.   Its effect is to make the exemption matter of exclusion, if demanded by either party at the trial of a cause.

The 35th section, for which so much effect is claimed, refers to the qualifications of jurors, when summoned by the Court, as they may be, whenever it becomes necessary to constitute a grand or petit jury in consequence of the neglect of the board to select the materials to compose one ; or when those selected are set aside from any cause.   It speaks of a jury *summoned,* in contradistinction to one *selected.*  · It adds nothing to the force of the previous sections, but merely provides, as also does the 31st section, that jurors, whether summoned or selected, shall possess the same qualifications and be free from the same objections.

3. It is further urged, that the 39th and 51st sections recognize and permit the challenge of the panel and array, both of the grand and petit juries ; also, that a plea in abatement is proper, either to the array of the grand jury, or to the disqualification of any member of it.   There is no question of this, but the challenge to the array, or a plea in abatement to the panel, involves the inquiry only, whether the jury has

been selected in the manner directed by the several sections of this chapter. Upon such an issue, the certificate of the officers, as provided by the eighth paragraph of the ninth section is conclusive. This is the effect of the decisions in the cases of The State v. Allen, 1 Ala. Rep. N. S. 442, and The State v. Clarkson, 3 Ib. 370.

4. As one of the pleas seems to call in question the fact of this certificate, it is proper to refer to the paragraph. It provides, that a list of the names of the persons so drawn, with their places of residence, shall be made out, certified by the attending officers, and the Clerk of the County Court, who shall deliver the same to the Clerk of the Circuit Court. The direction to insert the places of the residence of the several jurors, is a mere direction for the convenience of the sheriff in making the summons, and like a similar direction in the 10th section, for carrying it into the *venire*, is a matter which does not affect the essence of the certificate, as is evident from the 6th and 7th sections, when this is directed only in the event the residence is known. It is also said, the certificate shall be signed by the attending officers *and* the Clerk of the County Court. We are inclined to think this should be construed as *or*, for by the second section a majority of the officers named are competent to act, and therefore the Clerk of the County Court may not be present—a fact which certainly would not vitiate the proceeding, and which would render his certificate impossible. It is evidently a clerical misprision, and the object of the statute is fully answered by the certificate of the attending officers, *or* that of the Clerk of the County Court.

5. When the matter of the plea in abatement is the disqualification of a juror, we think that matters of exemption do not produce the same effect. Laying entirely out of view the inquiry, whether the direction in the first section, for the sheriff to prepare lists of the householders and freeholders, is to be considered as implying the disqualification of all who are not thus circumstanced—as to which we give no opinion —there is a class of persons who come within the purview of the 51st section. Such are persons convicted of bribery, forgery, larceny, &c. &c. who, by the act of 1827, (Dig. 169, § 2,) are disqualified from serving on juries in any suit. This

act having been passed to conform with the constitutional requisition, extends to exclusion from grand juries; but independent of it, the common law most probably excluded them, as not being within the terms good and legal men, who alone could serve as jurors.

6. The provision of the 36th section, that the time prescribed for the drawing and summoning of the grand and petit juries, shall be considered as directory merely, refers itself to the previous sections, which ascertain the time when the sheriff shall return the list of freeholders and householders, the time when the board shall meet to select the jury, and the time within which it shall be summoned; and was intended to indicate to the board, that their powers were not confined to the precise periods previously mentioned, but might be exercised at other periods if necessary. In this connexion the expression affords no warrant to the argument based on it, that the legislative intention was to allow the proceedings of the board selecting the jurors to be inquired into upon a collateral issue, i. e. upon a plea in abatement of the indictment. If such was the intention, the indictment might be abated, because the names of the jurors were not drawn out in a fair hand, the ballots with the names not rolled or folded, the box not shaken as well as it might have been, or the names of the jurors not written at length. Such a construction we consider unreasonable, and the statement of its effect seems fully to refute it.

One or more of the pleas asserts that a deficiency of selected jurors happened in consequence of the non-attendance of those summoned in the first instance, and that a juror was sworn without any order by the Court for the completion of the jury, as is required by the 16th and 17th sections. These sections direct what shall be done by the Court, when there is a deficiency of jurors previously selected to constitute a grand jury; the 16th directs, in that event, that the Court may, by an order to be entered upon its minutes, direct twice the deficient number to be summoned, from which the jury shall be completed. This, in our opinion, is a matter for the direction of the Court, as to the manner in which it shall proceed; but does not invest an accused person with the right to inquire whether the form has been pursued or other-

wise. This will be perfectly apparent when it is considered, that the Court at any time during the term, may amend its minutes and have the order entered. But independent of this, the previous decisions of this Court go no further than the allowance of a plea to the array of the grand jury, for imperfections in the mode of constituting it, when the mode is under the direction of distinct officers; when it is done by the Court itself, under this chapter, we consider that all collateral inquiry is precluded and the accused is thrown upon his plea, or challenge to the array, or selection of the jurors; or the individual disqualification of the jurors.

7. It becomes necessary, from the form and allegations of some of these pleas, to ascertain what certainty in them is necessary, whether with respect to existing facts or the negation of other facts which may be presumed from the state of the record. It is said the greatest accuracy and precision are required in framing pleas of this character, and that they should be certain to every intent. [Chitty's Plead. 445.] Now under the chapter which we are considering, there are two modes by which a grand jury may be lawfully constituted. One is, when the jurors are selected and constituted under the proceedings of the board; the other is, when there has been a neglect of these proceedings, or the jurors thus selected are set aside; under these circumstances the Court is authorized to empannel a jury. As the record shows a jury was empannelled, the presumption is, that it was lawfully so, and a plea in abatement, to be sufficient, must show, that neither mode was pursued.

8. It is also necessary to ascertain what parts of the action of the board, are of a nature to enter into, or are connected with, the administration of criminal justice, as it may sometimes happen that no certificate may appear. Thus it is evident that a mistake of the board in selecting a person who is of fair character, cannot prejudice the proceedings; or the omission to state the occupation of the juror, even if that was known. The essential matters are sufficiently apparent when the object of this legislation is inquired into. That was, as we have said, to *select* a class of individuals from the citizens at large. To effect this, a list of the freeholders and householders is to be obtained *biennially*, by the sheriff. Ev-

3

ery matter beyond this, seems to be nothing more than a direction to the board as to the manner in which they shall perform their duties. By this we are not to be understood that the board has the discretion to do, or omit at pleasure, what is required. On the contrary, the oath of office of the several members composing the board, is regarded as a pledge for the faithful exercise of the discretion imposed, and it is not unlikely they may be liable to indictment for a neglect to perform the duties. Beyond this, it is their duty to pursue the entire requisitions of the act, in every particular.

9. In all pleas of abatement of criminal proceedings, it is essential that facts should be stated out of which the defence arises, or a negation of that state of facts, which is to be presumed from the existence of a record. In either case, facts must be stated, and not the conclusion of the individual, either of law or of the consequences arising out of facts, or the non-existence of them.

What we have said when applied to these several pleas, will enable us to determine whether the demurrers were properly sustained.

The 1st, 3d, 4th, 10th, 11th and 12th pleas are defective, in not containing matter sufficient, if true, to abate the indictment.

The 2d and 5th are defective, because they assume legal conclusions, without setting out the necessary facts to sustain their conclusions, and do not negative the existence of other facts, which may be assumed, because a jury was empannelled by the Court, and it might lawfully be so, even if the facts asserted by these pleas are true.

The 6th plea is bad, because, if true, it cannot be collaterally ascertained.

The 7th, 8th and 9th would possibly be sufficient if they contained the negation that the jury was empannelled by the Court, upon the failure of a jury selected by the board of officers. In the absence of averments to this effect, the legal presumption is, that the jury was thus empannelled.

On the whole, and after a most careful examination of the statute, we are satisfied the demurrers were properly sustained.

☞ Decided at June term, 1845, and omitted by mistake.