[Cross v. The State.]

dodging in and out of the State of Alabama." This latter evidence was, upon motion of the State's attorney, excluded from the jury, against the objection and exception of defendant.

# Cross v. The State.

### Indictment for Assault with Intent to Murder.

1. *Objections to grand jury, as defense to indictment.*—Under the statutes now of force (Code, §§ 4732-53, 4889-90), which are substantially the same as the provisions of the Penal Code of 1841 on the same subject (Clay's Digest, pp. 450-60), no defense or objection to an indictment can be entertained, assailing the regularity of the selecting, drawing, or summoning of the grand jurors by whom it was found, or the qualifications of those jurors, *except* that they were not drawn in the presence of the officers designated by law; and that objection must be taken by plea in abatement, filed at the term during which the indictment was found. These provisions were judicially construed in the cases of *Brooks v. The State,* 9 Ala. 9, and *Boulo v. The State,* 51 Ala. 18; and this court adheres to the construction then given to them.

2. *Same.*—These statutory provisions, and these judicial decisions, relate only to objections founded on any informality or irregularity in the conduct of the officers who are by law charged with the duty of drawing and summoning grand jurors, and do not apply to the action of the court in supplying deficiencies in the number of jurors, or other matter of record in the organization of the jury by the court. As to these matters, the court must act within its statutory powers, and its disregard of statutory provisions is fatal to an indictment.

3. *Same; number of grand jurors.*—If eighteen persons are drawn and summoned.

VOL. LXIII.

[Cross v. The State.]

moned as grand jurors, as required by law, and three of them fail to appear, or, appearing, are excused, the grand jury should be organized with the remaining fifteen (Code, § 4753), and the court has no power to add to that number. If others are added, the grand jury is organized without authority of law, and all indictments found by it are vicious; but, while no valid conviction can be had under such indictment, the defect will not avail when presented collaterally. (Explaining and limiting *Finley v. The State*, 61 Ala. 201.)

4. *Same.*—If the grand jurors are drawn and selected by the proper officers, not from the list of householders and freeholders, as required by the statute (Code, § 4733), but from the list of registered voters, this is a mere irregularity, and furnishes no ground for reversing a judgment of conviction under an indictment found by such grand jury.

5. *Self-defense.*—To make out a case of justifiable self-defense, the evidence must show that the difficulty was not provoked or encouraged by the defendant; that he was, or appeared to be, so menaced at the time as to create a reasonable apprehension of danger to his life, or of grievous bodily harm, and that there was no other reasonable hope of escape from such present impending peril.

FROM the Circuit Court of Hale.

Tried before the Hon. GEO. H. CRAIG.

The prisoner in this case was indicted for an assault on Enoch Jemison with a knife, with intent to murder him. No objection was raised to the indictment, so far as the record discloses, either by plea in abatement, demurrer, or motion in arrest of judgment; and the trial was had on issue joined on the plea of not guilty. The record shows, however, that the grand jurors, by whom the indictment was found, were drawn and selected from the list of registered voters of the county, instead of the list of householders and freeholders; and this irregularity is here urged as error.

The evidence adduced on the trial, as set out in the bill of exceptions, showed that the defendant and said Enoch Jemison were both freedmen, and that the difficulty between them occurred at a dance, or "frolic," among the negroes on the plantation of Col. Lewis in said county. Jemison, on whom the alleged assault was made, had pulled off his shoes to dance, and could not find them when he quit dancing. Some one told him that Abe Cross, the prisoner, had taken them, or had hidden them; but the prisoner denied this, when asked for them; and an altercation thereupon took place between him and Jemison about the shoes, when one of the other freedmen present interfered, saying that Major Lewis would not allow any fuss on his place. The parties then went out of the house, but not together, nor at the same time. Jemison went to the wood-pile, and picked up a stick of wood, five or six feet long, and as thick as a man's arm; and when the prisoner came towards him, struck at him several times, but did not hit him. Other persons again interfered, and made Jemison go into the house, while the prisoner remained outside, talking and using threatening language.

[Cross v. The State.]

In a few minutes Jemison again came out of the door, holding a chair in his hand (as some of the witnesses testified), and threatening to strike the prisoner with it, who rushed up, and cut him in the side with his knife. As to the details of the rencontre, however, the testimony of the several witnesses was conflicting; and as no question was raised on the evidence, it is not necessary to state it at length.

"This being all the evidence, in substance, the court thereupon charged the jury ;. and after such main charge, the defendant requested the court to charge the jury, in writing, as follows : '1. If the jury believe, from the evidence, that the assault was made by the defendant upon Enoch Jemison (if any was made), in the sudden heat of passion, and unprovoked by any previous assault made by the defendant, or other provocation given by him, and without malice, then the defendant can not be convicted of an assault with the intent to commit murder.' 2. 'If the jury believe, from the evidence, that the defendant had a reasonable apprehension of loss of his life, or of great bodily harm, at the time the alleged assault was made (if any was made), then he is not guilty of any offense, and the jury should return a verdict of not guilty.'" The court refused each of these charges, and the defendant excepted to their refusal ; and these are the only rulings to which exceptions were reserved.

THOS. R. ROULHAC, for the prisoner. (No brief on file.)

H. C. TOMPKINS, Attorney-General, for the State, cited the following authorities : 1. As to the validity of the indictment, notwithstanding the irregularity in the drawing of the grand jury : Code, §§ 4759, 4889. 2. As to the charges refused : 1 Brickell's Digest, 339, §§ 59–63 ; *Tompkins v. The State*, 21 Ala. 569 ; *Miller v. Garrett*, 55 Ala. 96 ; *Tillman v. Chadwick*, 37 Ala. 317 ; *Eiland v. The State*, 52 Ala. 322 ; *Oliver v. The State*, 17 Ala. 587 ; *Noles v. The State*, 26 Ala. 31.

STONE, J.—The rules for the formation of grand and petit juries in this State, are prescribed in chapter 7, title 3, part 5, commencing with section 4732, of the Code of 1876. That section makes it the duty of the sheriff to obtain biennially a list of all the householders and freeholders residing in his county, from which list must be selected the names of such persons as may be thought competent to discharge the duties of grand and petit jurors. Section 4733 declares, that the sheriff, judge of probate, and clerk of the Circuit or City Court, or any two of them, shall select from said list the names of such persons as, in their opinion, are competent to

discharge the duties of grand and petit jurors with honesty, impartiality, and intelligence, and are esteemed in the community for their integrity, fair character, and sound judgment ;· and by section 4736, a list of the persons thus selected is required to be filed in the office of the judge of probate. Section 4738 prescribes when and by whom the grand and petit juries shall be drawn, to serve at any regular term of the court. The persons charged with this duty are the judge of probate, sheriff, and the clerk of the Circuit or City Court, or a majority of them. Section 4740 prescribes the manner of the drawing, and directs that " the minutes of the drawing must then be signed by the officers present, and filed in the office of the judge of probate." Section 4744 requires the clerk to issue the proper *venire*, and section 4745 makes it the duty of the sheriff to summon the jurors thus drawn. Section 4759 declares, "The provisions of this article" [all the foregoing, and many details] "in relation to the selection, drawing, and summoning of jurors, are merely directory ; and juries selected, drawn and summoned, whether at an earlier or later day, must be deemed legal, and possess the power to perform all the duties belonging to grand and petit juries respectively." Section 4889 of the Code declares, that "no objection can be taken to an indictment, by plea in abatement or otherwise, on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the formation of the grand jury, *except* that the jurors were not drawn in the presence of the officers designated by law." Section 4890 : "A plea to an indictment, on the ground that the grand jurors by whom it was found were not drawn in the presence of the officers designated by law, must be filed at the term at which the indictment is found."

Before the enactment of the statutes summarized above, it could be objected to the validity of an indictment, that the grand jury by which it was found had not been selected and summoned as required by law ; that one of the grand jury was not a qualified juror, or that the grand jury were not drawn, selected, summoned and impanneled as required by law. Any of these irregularities furnished matter for plea in abatement.—*The State v. Clarkson*, 3 Ala. 378 ; 2 Brick. Dig. 174, §§ 177, 179. ` Thus stood the law in this State, until the Penal (or penitentiary) Code of 1841 was enacted. By that code, the statutes on the subject were framed substantially as given above.

In *Brooks' case*, 9 Ala. 9, our present statutory system was brought in review before this court. After speaking of the

select class from which juries were to be drawn, this court in that case said : "The selection of this class of individuals is confided to a board, composed of the clerk and officers of the county," &c. . . "The board thus constituted is required to perform its duties in a particular manner, but is entirely independent of any supervision or control. Its action, by the eighth paragraph of the ninth section, is to be ascertained and made known by means of the certificate of the officers who compose it. When this certificate is made, its functions cease for the time, and there seems to be no mode by which its action upon the matters confided to it can be collaterally called in question, or re-examined. The jurors then selected are ascertained from the certificate of the board, which, in effect, is the same as a commission emanating from a proper source. It is not a question now to decide, whether fraud, mistakes, or irregularities, committed by this board, can not be inquired into, and its action set aside by the court, previous to the organization of the grand jury, even though the proper certificate may be produced ; but we think no such inquiry can be made at the instance of one indicted, so as to affect the prosecution. The jurors, when once selected and certified, seem to stand in the same condition as any other *de facto* functionaries, whose acts will not be vitiated, although they may afterwards be set aside, as having no right in the first instance to exercise the function. . . . It is further urged, that the 39th and 51st sections recognize and permit the challenge of the panel and array, both of the grand and petit juries ; also, that a plea in abatement is proper, either to the array of the grand jury, or to the disqualification of any member of it. There is no question of this ; but the challenge to the array, or a plea in abatement to the panel, involves the inquiry only, whether the jury has been selected in the manner directed by the several sections of this chapter. Upon such an issue, the certificate of the officers, as provided by the eighth paragraph of the ninth section, is conclusive."

In the formation of the grand jury which preferred the indictment in the case from which we have been copying, there was not a sufficient number of the persons selected, drawn and summoned, to meet the requirements of the statute. Other persons were thereupon summoned, from whom enough were selected to complete the grand jury. Under what order summoned, or how selected, the report of that case does not inform us. One of the pleas in abatement to the indictment was as follows: "That R. L. W., one of the grand jurors, &c., was not one of the jurors selected from the list of freeholders and householders, and summoned by the sheriff, nor

was his name contained in the *venire facias* returned into court; nor was he summoned, and his name drawn, in pursuance of any order of the court, made in consequence of the absence of any of the jurors mentioned in the *venire facias.*" Another of the pleas in abatement is as follows: "That no selection of persons qualified to serve as grand jurors was made, as required by law, from the list of freeholders and householders of said county of Mobile, obtained by the sheriff of Mobile county." There was a demurrer to these pleas, which the Circuit Court sustained. This court affirmed the judgment of the Circuit Court, and held that the demurrer was rightly sustained to those pleas.

The case from which we have quoted so largely, was brought to this court soon after the adoption of the Penal Code of 1841, and was decided in 1845. We think it must be regarded and treated as a sound and wise exposition of a new system, which was intended to put an end to most of the technical objections, which had theretofore embarrassed criminal prosecutions; and to reduce the administration of the criminal law, as far as constitutional limitations would allow, to a trial on the merits. This is the view taken of our statutory system on the subject, in the case of *Boulo v. The State*, 51 Ala. 18. That case simply affirms what sections 4759 and 4889 of the Code declare—that a plea in abatement of an indictment, that any one or more of the grand jurors by whom it is found is incompetent, or disqualified, or that there was any irregularity in the drawing of the grand jury, is fatally defective, unless it shows that the jurors were not "drawn in the presence of the officers designated by law." We think this doctrine must be adhered to, and maintained with a firm hand. It results that, under no circumstances, will a defense to an indictment be entertained, which assails the regularity of the selecting, drawing, or summoning of the grand jury by which it was found, or the time when these several acts were performed, or which asserts that any member of the grand jury was not legally qualified, or which urges any other ground, going to the formation of the grand jury; with the single exception, that it is a good defense, if interposed in time, that the grand jurors were not drawn in the presence of the officers designated by law.—Code, § 4890.

As we shall hereafter show, the foregoing principles and rulings relate to the selection, drawing, summoning and organization of the grand jury—those drawn before court, and summoned—as provided for in sections 4732 to 4753, inclusive, of the Code of 1876. Section 4753 declares, that "at least fifteen persons must be sworn on the grand jury;" and the next section provides, that "if fifteen persons, duly quali-

fied to serve as grand jurors, do not appear; or, if the number of those who appear is reduced below fifteen, by reason of discharges, or excuses allowed by the court, or by any other cause, the court must cause an order to be entered on the minutes, commanding the sheriff to summon, from the qualified citizens of the county, twice the number of persons required to complete the grand jury; . . and from them must be drawn, under the direction of the court, a sufficient number of names to complete the grand jury." In this proceeding, unlike the selection, drawing and summoning of the grand jury for the term, as shown in the *venire*, the presiding judge is an important actor, and the necessity, as well as the manner of its doing, is made matter of record in the court organizing the jury, and becomes a part of the caption of each and every indictment the body may prefer. While sections 4889 and 4890 evidently apply, as far as they go, to the jurors thus summoned, drawn, and sworn, errors committed by the presiding judge in thus supplying deficiencies in the number required to complete the grand jury, being matter of record, are inquirable into in this court, when the case comes properly before us on questions reserved, or on writ of error. Code of 1876, § 4990.

The system provided for selecting, drawing and summoning, in the first instance, the eighteen freeholders or householders, from whom the grand jury must be formed, if fifteen persons remain and are present, after passing on disqualifications and excuses, is wisely framed and hedged about, so as to render it difficult for fraud, partiality or corrupt influences to enter into the constitution of this indispensable agency in the administration of the criminal law. Hence, the legal presumption arises of its lawful and rightful constitution, as provided in sections 4759 and 4889 of the Code of 1876. When the action of the court is invoked to supply deficiencies, the same safeguards are not provided. This statutory power of the court is not called into exercise, unless the precise state of case arises for which section 4754 makes provision, namely : that fifteen persons duly qualified to serve as grand jurors do not appear, or that the number of those who appear is reduced below fifteen by reason of discharges or excuses allowed by the court, or by some other cause. Till this condition of things occurs (and the record must show it), there is no deficiency in numbers, and the court is without power to order the summons of other jurors. So, we have held, that if fifteen qualified jurors remain present, after allowing proper excuses, the court can not add other jurors, and thus swell the number above fifteen ; and this court reversed a conviction had on an indictment found

by a grand jury thus augmented above the number of fifteen. This was an error apparent on the record of conviction, and it was our duty to notice it.—Code, § 4990. In like manner, we reversed a conviction, because the presiding judge, in ordering jurors to be summoned to supply a deficiency in the requisite number of fifteen, directed the sheriff to summon them " from the bystanders present in court;" and the grand jury was thus organized. And when the presiding judge, of his own motion, quashed the regular *venire* of the grand jury, because, in his opinion, some of the persons whose names appeared upon it, had violated a statute of the State creating a misdemeanor, or had encourged its violation, and had thereupon ordered the sheriff to summon other persons, from whom the grand jury was organized, who found the indictment under which the defendant was convicted, this court reversed the judgment of conviction.—*Berry v. The State*, at present term; *Finley v. The State*, 61 Ala. 201; *O'Byrnes v. The State*, 51 Ala. 25. In each of these cases, the primary court had proceeded without any warrant in the statute; and while it was not intended to impute improper motives to the action of the courts in the several cases, the departure was too patent, and too liable to lead to abuse, for this court to sustain it, and thus make it a precedent. But, it was not our intention to overturn or weaken the authority of *Brooks' case*, 9 Ala. 9, or *Boulo's case*, 51 Ala. 18. We distinguished between the action of the board the law creates, in selecting and drawing the regular panel of the grand jury, and the order of the court, in directing the summons of persons to fill up a deficiency. The latter, as we have said, is part of the record caption of each indictment the grand jury may find.—1 Brick. Dig. 497, § 695.

In the case of *Finley v. The State*, 61 Ala. 201, it was our intention to declare, in emphatic language, that the Circuit Court had committed a reversible error, in requiring persons needed to make up a deficiency in the grand jury, to be summoned from " the bystanders present in the court." Hence, we reversed and remanded the cause, and ordered the accused to be kept in custody, until discharged by due course of law. We employed very earnest, perhaps fervid language, in expressing our disapproval of the course which had been pursued in the court below, while we did not intend to question the purity of motive which prompted the act. Arguments since made before us, and an attempted use of that case, convince us that its scope and purpose have been misunderstood; or, perhaps, in expressing our disapproval of the course pursued, and our apprehension of the abuse to which it might lead, we may not have sufficiently guarded

and qualified our expressions. We do not hold that that case stood before us as if no indictment of any description had been preferred. Our purpose was to declare that, under an indictment found by a body constituted as that was, no valid conviction could be had. If our language admits of a larger meaning than this, we hereby qualify it. Such a defect as that commented on in *Finley's case* will not avail, when presented collaterally.

In the present record it is shown, that the names composing the *venire* for the grand jury were drawn from the registered voters, and not from the selected list of householders and freeholders of the county, as directed by sections 4732, 4733, and 4738, of the Code of 1876. This is no ground for reversing the judgment of conviction.— Code, §§ 4759, 4889; *Brooks' case,* 9 Ala. 9 ; *Boulo's case,* 51 Ala. 18.

In the refusal of the court to give the charges requested by the defendant there is no error. The first was calculated to mislead, and was rightly refused on that account,—1 Brick. Dig. 339, §§ 59, 61. The second charge does not state enough to show a case of justifiable self-defense. To bring the case within that rule, it was necessary that the difficulty should not have been provoked or encouraged by the defendant ; that he was, at the time, so menaced, or appeared to be so menaced, as to create a reasonable apprehension of the loss of his life, or that he would suffer grievous bodily harm, and that there was no other reasonable mode of escape from such present impending peril. In the case of *Mitchell v. The State,* 60 Ala. 26, we said : When the fatal blow is given in consequence of passion suddenly engendered by a blow given, or which apparently is about to be given, then another inquiry arises : is the blow given, or about to be given, calculated to produce death, or grievous bodily harm? If it is, and the person assaulted has not brought on the difficulty for the purpose, and if he can not otherwise escape the danger, he may strike in self-defense." See, also, *Judge v. The State,* 58 Ala. 406, and authorities on the brief of the Attorney-General. The charge asked is wanting in several of the ingredients of justifiable self-defense, and was rightly refused.

Affirmed.