# Sale *v.* The State.

### *Prosecution for Exhibiting Gaming Tables.*

1. *Institution of prosecution by affidavit or procurement of solicitor.*
Although the solicitor is forbidden by statute "to commence a prosecution
by his own affidavit," except in certain specified cases (Code, § 779),
yet a prosecution will not be dismissed, as being brought in violation of
the statute, because the affidavit was made by a person who was at the
time in jail on a criminal charge, and whose name was subscribed to it
by mark, attested by the assistant solicitor.

2. *For what offenses prosecutions may be commenced by affidavit for war-
rant of arrest.*—Section 4702 of the Code, setting out the substance of an
affidavit for a warrant of arrest, to be issued by a justice of the peace or
county judge, although it uses the words, " an offense has been com-
mitted *against the person or property of A. B.*," &c., is not confined to
misdemeanors against the person or against property.

3. *Complaint, and warrant of arrest.*—Sections 4647–50 of the Code,
which have been of force, without material alteration, since the adop-
tion of the Code of 1852, apply only to preliminary proceedings before
committing magistrates, and not to criminal prosecutions before the
County Courts, or a justice of the peace, under the jurisdiction since
conferred.

4. *Objection to competency of presiding judge.*—An objection to the
competency of the presiding judge, in a criminal prosecution before the
County Court, " if available anywhere, is no ground for reversing the
judgment."

5. *Drawing jurors for County Court.*—The act regulating the trial of
misdemeanors in the County Court of Madison (Sess. Acts 1878–9, p.
279) directs, when a trial by jury is demanded, " the court shall order
the sheriff to summon, *instanter*, twenty-four householders or freehold-
ers of the county, from whom a jury shall be impanelled ; *provided*, the
judge of said court shall, whenever in his judgment the business of the
court demands it at any time, twenty days before each or either of the
regular terms of said court, make a written order on the minutes of the
court, to the sheriff of the county, directing him to prepare a list of the
householders and freeholders of the county, from which list must be
selected, in the same manner as now provided by law for the selection
of jurors for the Circuit Court, the names of twenty-four persons to dis-
charge the duties of petit jurors for the next ensuing term of the court."
*Held*, that these provisions are merely directory; and further, that
" it is not necessary, when there is a list of the qualified jurors of the
county already prepared, that the sheriff should procure and furnish a
new list whenever and as often as there is an order to draw twenty-four
jurors for a term of the court "

FROM the County Court of Madison.

Tried before the Hon. WILLIAM RICHARDSON.

The prosecution in this case was commenced by an affida-
vit made by Dixie White, before the presiding judge of said
court, stating " that he has reasons for believing, and does

[Sale v. The State.]

believe, that M. S. Sale, before the filing of this complaint, kept or exhibited a gaming-table for gaming, or was interested or concerned in the keeping or exhibition thereof;" which affidavit was subscribed by said Dixie by making his mark, attested by Nich. Davis, and a warrant of arrest was thereupon issued by the judge. On the trial, as the bill of exceptions shows, or when the case was called for trial, the defendant moved the court to quash the proceedings, and to dismiss the prosecution, on several distinct grounds. The first ground was, that the presiding judge, not having subscribed and filed his official oath as required by law, was incompetent to preside, and had no authority to try the case. Another ground was, " that the complaint and proceedings are not based on probable cause, supported by oath or affirmation, as required by law, and said complaint should have been made in accordance with the provisions of section 4702 of the Code." Another ground was, that Dixie White, by whom the affidavit purported to have been made, had been several times convicted of larceny in the mayor's court of Huntsville, and was under indictment for burglary, and was incapacitated to make an affidavit on which to institute a criminal prosecution. Another ground was, that the institution of the prosecution was in violation of the policy and meaning of the statutory provisions (Code, §§ 779, 4146) which forbid a solicitor to commence a criminal prosecution on his own affidavit, except in certain specified cases ; " and in support of this motion, and as a part thereof, defendant avers, that he is informed and believes, and upon information and belief states the fact to be, that while said affidavit purports to have been made by Dixie White, it was really made at the instance, request and procurement of the solicitor, or his recognized assistant or deputy, Nicholas Davis ; and the affidavit was thus procured to be made by said Dixie, to avoid the technical and literal [words] of said sections of the Code. Said Dixie White, when he made said affidavit, did not know this defendant. When defendant first came to this town, and from that time continuously up to the making of said affidavit, said Dixie White was imprisoned in jail on a charge of burglary, and could not have seen or known this defendant, and never did see or know him ; and in making said affidavit, he did it alone on the solicitation of said solicitor, or his deputy, and from no knowledge or information on his part of this defendant's having committed the offense with which he is charged in said affidavit ; and said affidavit, while it purports to be the affidavit of said Dixie White, is virtually the affidavit of the solicitor or his deputy." The court overruled each of these motions, and the defendant duly ex-

[Sale v. The State.]

cepted. He also filed a plea in abatement, setting up the same facts as to the manner in which the affidavit was procured ; and the court sustained a demurrer to the plea.

Before entering on the trial, the defendant moved the court to quash the *venire* of petit jurors summoned for that term of the court ; and the sheriff, being examined as a witness in support of this motion, "testified that the jurors embraced in the present panel were drawn from the box which had been prepared and used to draw jurors from for the special term of the Circuit Court ; that jurors had already been drawn from the box for the said special term of said Circuit Court, being about one hundred and sixty-two names which had thus been withdrawn ; that he did not prepare any list of householders and freeholders, as directed in the order made by the judge before the present term of the court ; that but one list of householders had been made by him, and that was made for the County Court in October, 1880, according to the order of the county judge. Said witness testified, also, on cross-examination, that in October, 1880, by order of the county judge, he prepared and presented to said judge a full, true and complete list of all the freeholders and householders of the county, who were qualified to serve as jurors ; that in December, 1880, in the presence of the judge of probate and the clerk of the Circuit Court, he drew out, in the manner prescribed by law, one hundred and twenty names as jurors, grand and petit, for said special court held in December, 1880 ; that in February, 1881, by the order of said judge, and in the manner prescribed by law, he drew from said list twenty-four names as jurors for said February term of said County Court, and in like manner in April, for the May term of said court, twenty-four more, making in all one hundred and sixty-two (?) names of persons drawn from said list ; that when ordered by the judge to prepare a list of householders and freeholders, from which jurors were to be drawn for the present term of said court, he presented to the judge the said list which had been made out in October, 1880, as stated ; that he (witness) adopted said list as a true and correct list of the householders and freeholders of the county, and that it did constitute a full, true and complete list of all the householders and freeholders of the county, who were liable and qualified to serve as jurors at the present term of the court." On this evidence, the court overruled the motion to quash the *venire*, and the defendant excepted.

The rulings above stated, with others which require no special notice, are now assigned as error.

[Sale v. The State.]

O. R. HUNDLEY, DANIEL COLEMAN, PAUL S. JONES, MILTON HUMES, and L. W. DAY, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

STONE, J.—Motion was made in the County Court to quash the affidavit and warrant of arrest, on two grounds: First, under section 779 of the Code of 1876, which provides that " it shall not be lawful for a solicitor to commence a prosecution by his own affidavit," with certain exceptions which do not affect this case. It is a sufficient answer to this objection, that the present prosecution was not commenced by the affidavit of the solicitor, nor even by that of his assistant.

Second: It is urged that the affidavit is insufficient in substance to support the warrant that was issued. The precise point of this objection is, that inasmuch as the charge in this case (the exhibition of a gaming-table) is not an offense to person or property, the affidavit prescribed by section 4702 of the Code of 1876 did not justify the warrant; that to authorize a warrant for the offense here charged, the complaint must conform to section 4647 to 4650 of the Code of 1876. Looking into the history of our legislation on this subject, we find the four sections above referred to were first made statute law of this State in the Code of 1852. Sections 3377, 3379, 3380, 3381, are, in substance, the same as sections 4647 to 4650 of the present Code. They became part of Stone & Shepherd's Penal Code of 1866, as sections 428 to 431, inclusive; and were incorporated, without alteration, as sections 3977 to 3980 in the Code of 1867. Thence they were transferred to the Code of 1876. These sections were adopted when we had no County Courts of criminal jurisdiction, and when justices of the peace had no authority to finally try any person charged with a misdemeanor. They relate to " preliminary proceedings," as is shown in all the Codes.—Stone & Shepherd's Code, chap. 5, art. 1; Code of 1867, same chapter and article; Code of 1876, chap. 4, art. 1. The sections referred to above, as will be shown by their language, were intended as a guide in proceedings before a committing magistrate. They were not, at the time of their enactment, and could not be intended as a guide in the trial of misdemeanors before a justice of the peace, or before the County Courts; for, at that time, neither justices of the peace nor County Court had such jurisdiction. The County Court, as a court of criminal jurisdiction, was created by Stone & Shepherd's Code, and by the same Code justices of the peace were clothed with certain limited criminal jurisdiction. That

Code was adopted February 23d, 1866. If that Code had been silent as to the manner of instituting proceedings before these courts of inferior jurisdiction, possibly the sections referred to above—4647 to 4650—would govern. But it was not silent. It not only created these courts of limited criminal jurisdiction, but it declared in what manner the jurisdiction could be brought into exercise. Chapter 7 of that Code, beginning with section 482, is devoted to "Proceedings in the County Court." It was made part of the Code of 1867, chap. 7, beginning with section 4032, and copied into the Code of 1876 as chap. 6, beginning with section 4702. The language of this provision has undergone no change since its first enactment. Section 473 Stone & Shepherd's Code, 4032 Code of 1867, 4702 Code of 1876, gives the substance of an affidavit to procure a warrant of arrest. Its language is: "A party aggrieved, or desiring to bring a charge of misdemeanor before the County Court, may apply to the judge thereof, or to some justice of the peace of the county, for a warrant of arrest; and upon making affidavit in writing, that he has probable cause for believing, and does believe, that an offense [designating the misdemeanor by name, or by some other phrase which, in common parlance, designates it] has been committed in said county by C. D. [naming the offender], on the person [or property, as the case may be] of A. B. [naming the person injured], then the judge of said court, or justice of the peace, shall issue his warrant of arrest." The next section furnishes a form for the warrant of arrest. "The County Courts have original jurisdiction, concurrent with the Circuit and City Courts, of all misdemeanors committed in their respective counties."—Stone & Shepherd's Code, § 383; Rev. Code, § 3931; Code of 1876, § 718. Now, section 718 of the Code of 1876 clothes the County Courts with jurisdiction of all misdemeanors, and section 4702 prescribes the constituents of the requisite affidavit " to bring a charge of misdemeanor before the County Court." We should do great violence to this language, if we limited its operation to cases of injury to persons or property. The words, 'person' and 'property,' employed in that section, were given as directions, when injuries to person or property are complained of. It was not intended they should narrow the operation of the general words employed in the first part of the section. We should give to each clause of the statute some operation, if we can.—*Brooks v. Mobile School Comm'rs*, 31 Ala. 227.

The objection to the competency of the judge, if available anywhere, is no ground for reversing the judgment.—*Masterson v. Matthews*, 60 Ala. 260; *Mayo v. Stoneum*, 2 Ala. 390.

[Nixon v. The State.]

We think the County Court did not err in refusing to
quash the *venire*. Governed by our statutory system on the
subject, and by its analogies, we think the clause of the act
approved February 13th, 1879 (Pamph. Acts, 279), for the
alleged non-observance of which the motion was made, must
be treated as directory.—Code of 1876, § 4759 ; *Cross v. The
State*, 63 Ala. 40. Aside from this principle, we are not con-
vinced there was any substantial departure from the statute,
in the drawing of the jury in this case. The intention of the
statute was, that the jurors should be drawn from the body
of the qualified jurors of the county. When there was such
list already prepared, and the drawing was from that list,
surely the legislature did not intend that, whenever, and as
often as there was an order to draw twenty-four jurors for
a term of the County Court, the sheriff should procure and
furnish a new list, and the drawing should be had from it.

Affirmed.