Frank Reeves v. The State of Florida.—Syllabus.

FRANK REEVES, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A demurrer to a replication to a plea in abatement will reach the plea if defective.

2. The greatest accuracy and precision are required in pleas in abatement merely setting up irregularities in the selection or drawing of jurors. and such pleas must be free from uncertainty or ambiguity.

3. The statute (Section 1, Chapter 3125, laws of 1879) providing a time for the Boards of County Commissioners to select from the list of registered voters in their respective counties a jury list of persons properly qualified to serve as jurors is directory ; and should said commissioners fail to make the selection at the January meeting mentioned in the statute, it would be competent for them to do so at a subsequent meeting.

4. The provision of the statute, *supra*, that the Boards of County Commissioners shall select from the registered voters of their respective counties a list of three hundred persons properly qualified to serve as jurors, who shall be such persons only as said commissioners know, or have good reason to believe, are of approved integrity, fair character, sound judgment and intelligence, provided that in any counties of this State said commissioners shall not be able to select the number required, they shall be authorized to select a less number, but said number to be the highest possible, invests such boards with authority to pass upon the integrity, character, judgment and intelligence of the persons to be selected as jurors, and in the absence of an illegal purpose, fraud or corruption in the selection of a less number than three hundred, the discretionary power of the commissioners in such matters will not be disturbed.

5. An objection that the offense charged in the indictment is vague, indefinite and insufficient to protect the accused against a subsequent prosecution, shall be made in the shape of an attack

on the indictment, and not by a motion for a new trial on the ground that the verdict is contrary to law.

6. An accused is entitled to the presumption of innocence until this presumption is overcome by testimony beyond a reasonable doubt, and also to the benefit of a reasonable doubt in his favor arising from the evidence, and to have the court to so charge the jury. It is error to refuse a request in behalf of an accused to so charge when the court has not already fully covered in its charge what is requested.

Writ of error to the Circuit Court for Wakulla county.

The facts in the case are stated in the opinion of the court.

*Nat R. Walker* and *Stephen C. Miller* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted at the November term, A. D. 1891, of the Wakulla Circuit Court for the larceny of a domestic animal. The averment as to the offense is that said "Frank Reeves, late of the county of Wakulla aforesaid, in the Circuit and State aforesaid, laborer, on the nineteenth day of June, in the year of our Lord one thousand eight hundred and ninety-one, with force and arms at and in the county of Wakulla aforesaid, a certain domestic animal, to-wit: a hog of the value of two dollars and fifty cents,

of the goods and chattels of Ellen Epps, then and there being found, feloniously did steal, take and carry away, against the form of the statute," etc. The plaintiff in error, as defendant in the trial court, filed a plea in abatement. It is necessary to set out this plea and the proceedings on it, in order that the objection sought to be raised by it may be presented.

In this plea it is alleged that said defendant should not be required to plead to the indictment because "the Board of County Commissioners of said county did not meet on the first week in January, 1891, for the purpose of selecting from the list of registered voters, and make out a list of persons qualified to serve as jurors for this term of the Circuit Court, but did meet thereafter as soon as practicable, to-wit: February 22nd, 1891, and selected the names of two hundred and eighty-five, said list being improperly certified to and signed by the chairman of the board."

2nd. "The defendant further asks the court that he should not be required to plead to the indictment, because that there are over six hundred registered voters, as is shown by the records of said county, in said county, and that the said County Commissioners as aforesaid were able to select more than the number so selected to serve as jurors."

"3d. And defendant further asks not to be required to plead, because that the officers of this court, after the drawing of the grand and petit jurors from said list as aforesaid, which were placed in a box the names

34

of the registered voters; did draw therefrom the grand and petit jurors who served as such jurors at the last spring term of said court.

"4th. The defendant further says that by instructions of said Board of County Commissioners, the officers, after drawing from said box the grand and petit jurors for the last spring term of this court, that said commissioners did instruct said officers to throw the names of said persons so selected to serve as grand and petit jurors as aforesaid out of said box, and the said officers did obey said instructions; further, that said Board of County Commissioners did meet on the 6th day of July, 1891, in the clerk's office in said county, without any judicial instructions from said Circuit Court, and proceeded again to select from the list of registered voters, qualified to serve as grand jurors, and did select the names of two hundred and eighteen out of the number of six hundred and more registered voters of said county, and from said list, which was improperly certified to by the chairman of said board to the clerk of this court, the officers of this court did draw the grand and petit jurors now serving as such jurors for this court, who are serving as such jurors without authority of law, and that, at said meeting in July, 1891, the Board of Commissioners were able to select more than the number of two hundred and eighteen from the registered voters of said county, who are persons of approved integrity, fair character, sound judgment and intelligence, as is

shown by the annexed affidavit from the officers of this court and citizens of this county, and filed as exhibit ' A ' and made a part of this plea.''

The affidavit referred to in the plea is signed by the county judge, sheriff, collector of revenue, and two others. It is stated in this affidavit that the affiants had ''examined the list of names recorded by the clerk, furnished to him by the Board of County Commissioners at their July meeting of the year 1891, and recorded on their minutes, and from said list the names of persons who were selected to be placed in a box to be drawn as grand and petit jurors for the Fall term of the Circuit Court,'' and that said list does not, in their judgment, contain all the qualified registered voters in said county who are qualified to sit as grand and petit jurors ; that the names of many persons are omitted who would be qualified jurors, and the names of ten persons are mentioned.

The State Attorney filed the following replication— omitting formal parts—to the plea : ''That notwithstanding anything by the said Frank Reeves above in pleading alleged, this court ought not to be precluded from taking cognizance of the indictment aforesaid, because he says, that the court having discharged the jurors at the spring term of said court, for the reason as is made to appear to said court, as set out in said plea of said defendant, the County Commissioners had not, up to the holding of said spring term, caused a

proper list of names to be given to the clerk, as required by law, to be placed in the jury box to be drawn from, and therefore there being no proper jury box for said county, at said spring term, the said County Commissioners proceeded, as early after the first week in January as practicable, to select names to be placed in the jury box for the county of Wakulla, to-wit: on the 6th day of July, 1891, the list of which said names, properly certified to and signed as required by law, was duly recorded, from which said list the clerk put names in said box, on pieces of paper, as required by law, and from which said box, the names of the grand jurors and petit jurors, for the present term, were duly drawn, after due notice as required by law. To all of which said matters and things reference is prayed to the records of this honorable court," &c.

There was a demurrer filed by said accused to this replication. The grounds of the demurrer are, that the replication is bad, because "the defendant's pleas do not allege that it was made to appear, as mentioned in the State Attorney's replication, that the court discharged the jurors at the spring term of said court for the reason therein set forth, or for other reasons as made to appear by order of the Circuit Court as alleged; and further, that the legality of the drawing of the grand and pettit jurors by the County Commissioners was not determined or considered by said court, as was alleged in defendant's plea.

There was a joinder on the part of the State Attorney in the demurrer to the replication, and the record shows that the court overruled the demurrer and overruled the plea, and required the accused to plead to the indictment.

There is copied into the record what purports to be copies of the minutes of the Board of County Commissioners in reference to the selection of jury lists in February and July, A. D. 1891, but they are not embodied in the bill of exceptions, and there is nothing to show that they or the originals were introduced in evidence before the court, or were in any way used by the court in the disposition of the plea in abatement. Not being incorporated properly into the bill of exceptions, we are unable to refer to them, and hence no further notice will be taken of them.

After the demurrer to the replication was overruled, the accused was, upon arraignment and plea of not guilty, convicted by the jury and sentenced by the judgment of the court to four months' imprisonment in the State Penitentiary, from which judgment he brings a writ of error to this court.

The action of the court in overruling the demurrer to the replication and setting aside the plea in abatement of the accused is assigned here as error. If either the plea in abatement be bad, or if the replication present a sufficient answer thereto, there is no error in the disposition made of the plea by the court.

The demurrer to the replication will reach back to a defective plea, if such be the case, and should the plea be found good and the replication to contain a good answer to it, the issue has been properly determined against the sufficiency of the plea.   It is true that where a replication sets up issuable matter in avoidance, issue may be taken on it and a trial had on this issue.   But in the absence of any such issue tendered on the part of the accused, after demurrer to the replication overruled and a trial on the plea of not guilty, it will be taken in the appellate court as a concession on his part that the facts of the replication are true.   In construing pleas in abatement setting up simply irregularities in the drawing of jurors, great strictness is required.   Such pleas, which come under the class of what are known as dilatory pleas, are not looked upon with favor by the court.   In framing such pleas, the authorities hold that no uncertainty or ambiguity should exist, and in fact the greatest accuracy and precision are required, and they must be certain to every intent.   Dolan vs. People, 64 N. Y., 485; State vs. Bryant, 18 Tenn., (10 Yerger), 527; State vs. Brooks, 9 Ala., 9; Hardin vs. State, 22 Ind., 347; 1 Bishop's Criminal Procedure, sec. 324.   The pleas before us do not attempt to question the qualifications of any of the grand jurors who found the indictment. The sole objection is to the manner of selecting them. The rule of strict construction should be applied to such pleas, and unless they fully comply with the rule they should not be sustained.   The statute provides "that the Board of County Commissioners, at a meet-

ing to be held the first week in January of each year, or as soon thereafter as practicable, shall select from the list of registered voters in their respective counties and make out a list of three hundred persons properly qualified to serve as jurors, who shall be such persons only as they know or have good reason to believe are of approved integrity, fair character, sound judgment and intelligence, which list certified and signed by the chairman of the board, shall be forthwith delivered to the clerk and by him recorded in the minutes; provided, that in any counties of the State, the County Commissioners shall not be able to select the number required by this section, they shall be authorized to select a less number, such number to be the highest possible." Section 1, Chapter 3123, Laws of 1879. As to the time when the Board of County Commissioners shall meet and select the jury list, the statute must be held to be directory. This is evident from the terms of the act itself, as it provides the list shall be made at the meeting in January, or as soon thereafter as practicable. It is the duty of the County Commissioners to act in such matters at the January meeting, and they should perform this duty, in order to provide jurors for any term of court that may be held in the county during the year; but should they fail to make the selection at the January meeting, it would be competent for them to do so at a subsequent meeting. Burlingame vs. Burlingame, 18 Wis., 299; Thomas vs. People, 39 Mich., 309; Colt vs. Eves, 12 Conn., 243.

The first and fourth pleas allege a selection of a less

number than three hundred names to serve as jurors. The second plea avers that there were over six hundred registered voters in Wakulla county, as shown by the public records, and that the County Commissioners were able to select more than the number selected at the first meeting which was 285. Under the act of 1868 the County Commissioners were required to select the names of three hundred persons to serve as jurors. In Gladden vs. State, 13 Fla., 623, where the Commissioners, under this act, furnished to the clerk a list of 302 names from which the grand and petit jurors were drawn, it was held to be a proper ground of challenge to the array of the petit jury. A plea in abatement will reach the organization of a grand jury from such a list. *Ibid.* The act of 1879, *supra*, contains a proviso that if the County Commissioners shall not be able to select the number of three hundred, they are authorized to select a less number, such number to be the highest possible. The selection is to be made from the registered voters of the county, and they shall be such persons only as the Commissioners know or have good reason to believe are of approved integrity, fair character, sound judgment and intelligence. The Commissioners are the judges as to the integrity, character, judgment and intelligence of the persons to be selected as jurors. The statute has delegated to this board the authority to pass upon such qualifications of persons to be selected as jurors, and in the absence of an illegal purpose, fraud or corruption in the selection of the jury list, we think the discretionary power of the Commissioners in such matters cannot be set aside.

Hardin vs. State, *supra*. Conceding that the affida-
vit attached as an exhibit to the fourth plea is a part
of it, and giving due consideration to its statements, it
extends no further than to allege that the list selected
by the County Commissioners does not, in the judg-
ment of the affiants, contain all the registered voters in
said county who are qualified to serve as grand and
petit jurors. It is the judgment of the County Com-
missioners, in the absence of fraud or corruption, that
controls in such matters and their determination will
not be set aside by the opinion of others, that a large
number of persons could have been selected who are
possessed of the requisite qualifications. We fail to
find in the first two pleas any sufficient allegations to
constitute any valid objection to the indictment. If
the Commissioners made the selection at the February
meeting instead of the January meeting, there is noth-
ing alleged to show that it was not competent for them
to do so, nor is there any sufficient allegation to show
that the selection of a less number than three hundred
was in violation of the statute conferring authority
upon the board to do so. But independent of the ques-
tion of the sufficiency of the allegations of the pleas,
there is no connection between what is therein alleged
and the indictment upon which the accused was tried.
It is not therein alleged that the indictment was found
by a grand jury drawn from the list selected in Feb-
ruary, A. D. 1891, and this being so, there is nothing
in said pleas standing alone or in connection with each
other which presents any objection to said indictment.
It is difficult to ascertain what defense is designed to

be set up by the third plea. It may be that something has been omitted which would make its meaning more definite, but aside from its uncertainty and ambiguity, its failure to allege anything in connection with the indictment in question renders it defective.

In the fourth plea there is an allegation in effect that the officers after drawing from said box the grand and petit jurors for the last spring term of the court, by instructions of the County Commissioners, threw the names of said persons so selected to serve as grand and petit jurors aforesaid out of said box, and said officers obeyed such instructions. According to this allegation, the names thrown out of the box were those drawn for the spring term of the court. The pleader's purpose, doubtless, was to allege that after the spring drawing by instructions from the county commissioners, all the names remaining in the box were thrown out, but this is not stated. The most that can be made of the allegation is that the officers threw out of the box the names of persons drawn to serve as grand and petit jurors for the spring term of the court. The further allegation of this plea, in effect, is that the county commissioners met in July, 1891, and again selected the names of 218 out of the number of 600 and more on the list of registered voters of said county qualified to serve as grand jurors, and from the list of names selected, which was improperly certified to by the chairman of said board to the clerk of the court, the officers of the court did draw the grand and petit jurors serving as such for the court, but without authority of

law ; and further, at said July meeting the said county commissioners were able to select more than the number of 218 from the registered voters of said county possessed of the requisite qualifications. If the commissioners had the right to make a selection at all in July, the selection of a less number than 300, as we have already seen, was a matter of discretion with them, and it follows from what we have already said, that if the Board of County Commissioners had not, prior to the July meeting, 1891, performed the duty of selecting a jury list for that year, they could do so at that meeting. If the fourth plea alleged that the board met in February, A. D. 1891, and selected 285 names which were properly placed in the jury box, and then caused these names to be thrown out of said box after the spring term of the court; and again at a meeting in July of the same year selected 218 names to serve as jurors, and that the grand jury in question was drawn from the last selection, a serious question as to the validity of such a selection and drawing would be presented. But this plea does not allege these facts. The first plea alleges a drawing in February, but there is no reference to this plea in the fourth, nor any such connection between them as to aid one by a reference to the allegations of the other. The fourth plea, depending upon its own allegations, does not show that what the board did at the July meeting was not in compliance with the statute. The mere fact of meeting in July and selecting a jury list, does not render that action void, nor does the selection then of only 218 names of qualified persons to serve as

jurors accomplish the same thing. The allegation that they met in July, 1891, and proceeded again to select a jury list does not show that the board had at any previous meeting in that year so acted in the matter of selecting juries as to have exhausted their power in this respect. In fact, to allege that the board met in July, 1891, and proceeded again to select a jury list, does not definitely state that the board had prior to that time in the same year made any selection at all. This plea does not negative the conditions necessary to make the alleged July selection illegal.

As stated in the beginning of the discussion of these pleas, the greatest accuracy and precision are required in them, and in order to be good they must exclude the idea of a legal selection in July. State vs. Brooks, *supra*. In this respect this plea is defective. The other allegation, that the list was improperly certified by the chairman of the board, is simply a legal conclusion, and does not state any facts upon which the court can determine the sufficiency of the certificate. Tested by the rules applicable to such pleas, we think those before us are defective, and the court did not err in overruling them.

The action of the court in overruling the motion for a new trial is also assigned as error. The grounds of this motion are, that the verdict is contrary to law, contrary to the evidence, and contrary to the charge of the court. It is alleged to be contrary to law in this, that the material allegation in the indictment as to the

animal alleged to have been stolen is "vague and indefinite, and insufficient to describe its identity as required by law for the protection of the defendant against a subsequent prosecution for the same offense." No objection was made to the indictment, either by motion to quash or in arrest of judgment. The objection sought to be raised by the ground of the motion for new trial, that the verdict is contrary to law, because the indictment is vague and indefinite, came after trial and conviction. The verdict of the jury is based upon the testimony as applied to the law given by the court, and in the case before us is sufficient in our judgment to sustain the finding of the jury. The objection sought to be raised by this ground of the motion should have been presented in the shape of an attack on the indictment. The verdict, it is claimed, is contrary to the evidence, because the ownership of the hog was not sufficiently shown. We think the testimony was sufficient in this respect. The State witness, Johnson, first testified that the hog which he saw the defendant cleaning, belonged to witness, but in the same connection he further testified : " I say it is my hog. It is not mine either ; it belongs to Ellen Epps, my wife's mother. I gave it to Ellen Epps when it was a little pig, and it was sure Ellen Epps' hog." The testimony introduced by the State, if true, is sufficient to sustain the allegation of ownership, and its credibility is exclusively a question for the jury.

It is also contended that the court erred in refusing

the first charge asked by the defendant. The instruction refused is as follows : " That the innocence of the defendant must be presumed until the case proved against him is in all its material circumstances beyond a reasonable doubt ; that to find him guilty as charged; the evidence must be strong and cogent, and unless it is so strong and cogent as to show defendant's guilt to a moral certainty, the jury must acquit." Before this charge was asked the court charged the jury : " If you have any doubt as to the guilt of the defendant, you should give him the benefit of that doubt, and acquit him." It will be seen that the judge did not define in his charge what was a reasonable doubt, or instruct the jury that they should act upon such a doubt. The accused is entitled to the benefit of a reasonable doubt arising from the evidence in his favor, and to have the court to instruct the jury that he is so entitled. He is also entitled to the presumption of innocence until this is overcome by testimony beyond a reasonable doubt. The charge asked contains correct propositions as to the presumption of innocence, and what is a reasonable doubt, and should have been given. The charge given can not be said to cover fully what was asked and refused. In this respect the court was in error. If an exception had been taken to the charge of the court on the subject of larceny, we would express our views on

its accuracy. We doubt its correctness because of its failure to state that there must be a felonious taking.

For the error above mentioned, the judgment is reversed and a new trial awarded.