188 So. 691

### COMER v. STATE.

### 4 Div. 441.

Court of Appeals of Alabama.

Jan. 10, 1939.

Rehearing Denied March 21, 1939.

Roy L. Smith, of Phenix City, for appellant.

A. A. Carmichael, Atty. Gen., and R. L. Farnell, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case charged this appellant with the offense of burglary. Specifically; that with intent to steal he broke into and entered the dwelling house, or shop, store, warehouse or other building of C. M. Pickron, in which goods, merchandise, or clothing, things of value, were kept for use, sale or deposit, etc. In answer to the indictment the defendant interposed his plea of "not guilty."

The trial in the court below resulted in the conviction of the defendant, the jury returned the verdict: "We the jury find the defendant guilty as charged in the indictment." And to said verdict added: "and recommend the mercy of the court." Whereupon, as the law requires, the court adjudged the defendant guilty and duly sentenced him to serve an indeterminate term of imprisonment in the penitentiary for 18 months as a minimum and 24 months as a maximum punishment. From the judgment of conviction pronounced and entered this appeal was taken.

The principal insistences of error are based upon the four propositions as follows:

1. The Court erred in not giving the affirmative charge requested by the defendant.

2. The Court erred in refusing to exclude the testimony of the witness C. M. Pickron, on motion of the defendant.

3. The Court erred in refusing to exclude all of the testimony of the witness C. M. Pickron.

4. The Court erred in not excluding the testimony of L. N. Alsobrooks on page seven and eight in the motion of the defendant.

Each of the foregoing insistences of error has had our careful consideration. We are clear to the opinion that the court committed no error in refusing to defendant the general affirmative charge. The evidence adduced upon the trial of this case presented a jury question, and in our opinion was ample to sustain the verdict. As relates to the main fact, the evidence tended to show that the defendant was a frequent visitor to the building burglarized

and was familiar with the premises. He was admittedly there during the night of the undisputed burglary and prior thereto. He was thus afforded the opportunity to commit the crime; and in a short period of time after the offense was committed, the defendant was found to be in possession of certain articles of merchandise, identical to the articles stolen at the time of the burglary. The injured party Pickren testified that two full boxes of chewing gum and one broken box of chewing gum was stolen at the time. The defendant was found in possession of two full boxes of chewing gum and a broken box of the same kind as that which was stolen. He, Pickren, also testified that there was also stolen at the time a considerable sum of money consisting of small coins. The defendant on the Tuesday following the burglary on Saturday night, went into a Bank and undertook to exchange a lot of small coins of money into bills, but before he could be waited upon by the men working in the Bank, the injured party had occasion to enter the Bank on other business, and as soon as the defendant saw him the defendant turned his back and "hurriedly" left the Bank without exchanging the small coins for bills which he was seeking to do before Pickren entered. To the two officers who testified for the State he denied going to the Bank on the Tuesday morning in question, but when testifying in his own behalf he stated "I went to the bank to get a bill for the change." Some packages of rubber goods, with the picture of a woman thereon, were also stolen. When apprehended two days after the burglary the defendant was found in possession of rubber goods of the same quantity and identical with those which had been stolen. In undertaking to explain his possession of the rubber goods the defendant testified: "I don't remember where I bought those things. You can buy those most anywhere. I didn't buy three packages at a time, I had more than that, I bought them all at the same place,—I don't know where or when."

The burglar who entered the building gained entrance by breaking the boards from a window and stepping through this opening into the room and in so doing stepped upon a pillow on the bed next to the window and left an imprint or track on the pillow of the foremost part of his foot, and this track was clearly apparent made so by the dust, and on the toe of the shoe track there was an imprint made by a metal tap. The defendant was in possession of a pair of shoes with metal taps on the toe and told the searching officers that he wore that pair of shoes on Saturday night of the burglary. The searching officers exhibited a bordered handkerchief, which had been found on the floor of the burglarized room immediately after the burglary was committed, and the defendant stated to them that it was his handkerchief and that he had bought it. Upon being informed by the officers where the handkerchief had been found, he then denied it was his, and stated he had not bought it.

■■ The court delivered an excellent oral charge to the jury and correctly stated the well-settled rule of law in this State, which imposes upon the defendant the onus of explaining his recent possession of stolen goods, and provides, if he fails to make a reasonable explanation thereof, a presumption of guilt arises which will support a verdict of conviction. It is the province of the jury to determine whether or not such explanation of possession is reasonable and true.

■ The contention that the court erred in further refusing the affirmative charge to defendant because of a variance in the name of the injured party is wholly without merit. The name, as appears in the indictment, is spelled Pickron, and the proper way to spell the name is Pickren. In the first place the names are idem sonans. Moreover, in this connection Mr. Pickron testified as follows: "I spell my name P-i-c-k-r-e-n. About ninety per cent of the mail I get is spelled 'ron.' I never sign my name 'ron' to anything, but other people do; I can go up there now and get lots of mail spelled 'ron.' I answer when they spell it that way." It has been repeatedly held the mere mis-spelling of the name of the injured party will not vitiate, or produce a fatal variance. The test is whether the pronunciation of the name proved, is satisfied by the manner in which it is written. Page v. State, 61 Ala. 16, 17. In the case it affirmatively appears that the injured party was as well known by the name of Pickron as he was by the name Pickren. No injurious error inured to defendant in this connection.

The exceptions reserved to the court's rulings upon the admission of evidence are so clearly without merit as to necessitate no discussion.

473

In addition to insistences of error above noted, we have, as the law requires, examined the entire record, and find no semblance of error. It follows that the judgment of conviction from which this appeal was taken must be affirmed. It is so ordered.

Affirmed.