Albert L. Patterson, Phenix City and L. A. Farmer, Dothan, for appellant.

The accused did not testify at the trial in the circuit court nor offer any evidence in his behalf.

It is convincingly clear that the judgment of the court below must be affirmed. It is so ordered.

Affirmed.

60 So.2d 198

**MAYO v. STATE.**

**4 Div. 212.**

Court of Appeals of Alabama.

Aug. 5, 1952.

Si Garrett, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

502

### HARWOOD, Judge.

This appellant stands convicted of burglary in the second degree, the place burglarized being the office of the Atlanta and St. Andrews Bay Railway Company in Dothan, Alabama.

The evidence presented by the State tends to show that on the night of 9–10 May 1951, some one broke a glass pane out of a door, unlocked the door, and gained entrance to the railroad company's office.

Mr. H. L. O'Neal, a warehouse foreman, discovered the burglary about 5:30 on the morning of 10 May 1951. He promptly notified other agents of the company.

Two safes were kept in the office. The dial combination had been broken off of the larger safe, but entrance had not been gained.

A smaller safe, weighing about 300 pounds was missing, though the dial combination to this safe was also found lying on the floor.

This smaller safe contained, among other things, two tin boxes, one bearing labels reading "The Bay Line," the other bearing labels·reading "Central of Georgia." These labels had been written by an employee of the office on paper taken from one of the scratch pads used in the office and had been affixed by means of scotch tape.

A few hours after the burglary the Sheriff of Houston County recovered this smaller safe in the vicinity of Cowarts, in Houston County. One of these tin boxes was still in the safe.

The appellant and his wife had moved to Dotham about 1 May 1951, and the appellant had rented a house for the month of May 1951, the house being located at 222 Kornegay Street in Dothan.

On 27 May 1951 officers had gone to appellant's house at the above address and arrested him on a charge of assault with a deadly weapon, this alleged offense occurring in Florida.

On 31 May 1951, armed with a search warrant, the officers returned to the house and searched it. They first contacted a cousin of appellant who accompanied them to the house and admitted them thereto, with a key which she had.

During the search the officers found a tin box of the type kept in the smaller safe. This box was found in a crevice over a door in a closet in the house. They also found in the yard, a few feet from the house, and partly concealed by brush, a sledge hammer. This hammer had a white substance adhering to its head.

The box, hammer, a wad of the "filler" from the smaller safe, and the door of the safe, and a sheet of paper from a pad of the type furnished the office by the railroad for a long number of years were taken to the office of the State Toxicologist in Auburn for examination.

W. M. Sowell, Associate State Toxicologist, testified that the white substance on the head of the sledge hammer was similar in appearance and texture to that of the so-called filler ordinarily used in the construction of safe doors, which material contains mica; that a microscopic comparison between the substance on the hammer and a sample of filler from the safe door showed that the sheets of mica on each were the same in appearance.

Mr. Sowell further testified that a small piece of scotch tape and white paper was adhered to the box turned over to him. An examination of this paper showed it to be of the same general color, weave, and pattern as the sheet of paper taken from the scratch pad used in the railroad office.

Similar red dust particles were also found by Mr. Sowell in the tin box found in appellant's home and the box found in the safe when it was recovered.

Mr. McRae, the employee who had pasted the labels on the tin boxes, testified that the box found in appellant's house was one of the boxes kept in the smaller safe, his identification being based largely on scotch tape and paper still adhering to the box in

the place where the label had formerly been pasted on.

For the defense the appellant's wife testified that officers came to the house at 222 Kornegay Street on 27 May 1951 and searched it at that time. On this occasion the appellant was arrested on the Florida charge, and no one said anything about a burglary.

The appellant as a witness in his own behalf denied generally any knowledge of or participation in the burglary.

On cross-examination he testified that he had rented the house at 222 Kornegay Street for the month of May 1951; he further admitted that he had previously been convicted and sentenced in Georgia on a charge of burglary, and in Alabama on a charge of grand larceny.

A defendant in a burglary prosecution found in possession of recently stolen goods has the onus of explaining such possession to the satisfaction of the jury, otherwise such possession is a fact from which the jury may infer guilt. Comer v. State, 28 Ala.App. 470, 188 So. 691; Dickey v. State, 32 Ala.App. 413, 26 So.2d 532. Further, possession of a portion of recently stolen goods constitutes a fact from which a jury can infer that the possessor had stolen all of the goods. Dickey v. State, supra, and cases cited therein.

Concededly, the evidence against this appellant is circumstantial. However, a strong chain of circumstantial evidence is "as cogent of the existence of a fact as any array of direct evidence." DeSilvey v. State, 245 Ala. 163, 16 So.2d 183, 186.

It is our conclusion that the evidence presented by the State in this case was ample in its tendencies, if believed by the jury under the required rule, to sustain the verdict and judgment rendered and entered. No error therefore resulted from the refusal of appellant's single requested written charge which was affirmative in nature, nor in overruling appellant's motion for a new trial on those grounds questioning the sufficiency of the evidence.

Among the grounds of appellant's motion for a new trial was one to the effect that he was denied the right to confer privately with counsel prior to his trial. All of the evidence introduced at the hearing on this motion tended strongly to deny the allegations of such ground and to establish that appellant did in fact confer several times prior to his trial with counsel, privately, and whenever counsel appeared to confer with him in jail. No reason appears to disturb the trial court's action in denying the motion for a new trial on this ground.

Affirmed.