# Clemons *v.* The State.

## *Murder.*

(Decided April 5, 1910. 52 South. 467.)

1. *Jury; Grand Jury; Formation.*—When a grand jury is not drawn in the presence of officers designated by the law, or when there is some order of the court, or action of the judge appearing of record relating to the organization of the grand jury, which is contrary to or unauthorized by the law, objection may be taken to the formation of such grand jury notwithstanding the provisions of section 7572, Code 1907.

2 *Same.*—Where no grand jury had been drawn for a regular term the judge of such court could order the jury commission to draw a special grand jury. (Construing together section 7257, Code 1907, section 29, Local Acts 1907, page 206, relative to the Morgan County Law and Equity Court.)

3. *Witnesses; Examination; Bringing Out All of Conversation.*— Where, on cross examination, the defendant had brought out part of the conversation between the witness and a person who swore out the warrant for defendant's arrest as to threats made by the defendant concerning such person, and the reasons therefor, it was competent for the state in rebuttal to have the balance of the conversation.

4. *Appeal and Error; Presumption; Bill of Exceptions.*—The presumption is indulged that the recitals of the bill of exceptions are true, and where the bill recites that defendant brought out part of the conversation, it will be presumed to be true in support of the court's ruling permitting the state to have the rest of the conversation.

5. *Evidence; Similarity of Conditions.*—Where the conditions of the bodies and the manner in which death was inflicted were entirely different from the condition and mode of death in the case at bar, a witness was improperly permitted to testify as to the time within which, after death, blood flowed from the other body.

6. *Same; Opinion Evidence; Competency.*—One not shown to be a practising physician or surgeon, nor to have any scientific knowledge on the subject, is not competent to testify as to the time in which the blood in a human body would coagulate, and cease to flow after death, such subject being one for expert testimony.

7. *Same; Qualification.*—To qualify a witness to testify as an expert it must appear that by study, practice, experience or observation as to the particular subject, such witness had acquired a knowledge beyond that of ordinary persons or witnesses.

8. *Charge of Court; Shifting Burden of Proof.*—The burden of proof in criminal cases is always upon the state, except as to special defenses provided by statute, such as insanity and former

[Clemons v. The State.]

conviction, and an instruction that the burden was not on defendant to prove that some one else had committed the crime, but that it was upon him to establish his innocence after the state had made out a prima facie case, was erroneous as shifting the burden of proof.

9. *Same; Weight of Evidence.*—A charge asserting that as a matter of law the corpus delicti had been proven, if the jury believed the evidence was a charge upon the weight of evidence in violation of section 5362, Code 1907.

10. *Same.*—A charge asserting that the alleged confessions of the defendant were voluntary, if the jury believed the evidence, and that if they believed the confession and the other evidence the defendant was guilty, was erroneous as a charge upon the weight of the evidence.

11. *Same; Directing Verdict.*—Where there is any evidence upon which an acquittal can be based, or where the facts pointing to guilt rested in inference only, the affirmative charge as to guilt cannot properly be given.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

From a conviction of murder Bob Clemons appeals. Reversed and remanded.

JOHN R. SAMPLE, and CALLAHAN & HARRIS, for appellant. The power of the court to make an order for the grand jury must be found under statutes creating the court, or the general statute.—*O'Byrne v. The State*, 51 Ala. 25. There is no discretion resting in the court to organize a grand jury in a manner other than the statute provides.—*Berry v. The State*, 63 Ala. 126; *Tucker v. The State*, 44 South. 587. See in this connection Local Acts p. 193. Objections to the formation of the grand jury may be allowed in two classes of cases. First, when not drawn in the presence of the officers designated by law, and second, where there is some order of the court or action of the judge appearing of record relating to the organization of the grand jury which is contrary to or unauthorized by the statute, and this, notwithstanding the provisions of section 7572, Code 1907.—*Nordan v. The State*, 143 Ala. 22; *Fryer v. The State*, 146 Ala. 7; *O'Byrne v. The*

*State, supra; Berry v. The State, supra; Tucker v. The State, supra.* The court erred in permitting the state to draw out the balance of the conversation.—92 Ala. 26; 6 Enc. of Evid. 450. Aside from the confessions, the record fails to show proof of the corpus delicti and the evidence should not have been admitted.—*Winslow v. The State*, 76 Ala. 42; *Johnson v. The State*, 37 South. 937; *Smith v. The State*, 133 Ala. 145; *Stringer v. The State*, 135 Ala. 60. The court erred in admitting evidence as to the flow of blood from the two bodies other than that of deceased.—*A. G. S. v. Burgess*, 114 Ala. 596; *Moyer v. Thompson-Hutchison Bldg. Co.* The witness was not qualified to answer the question, as he is not shown to be an expert.—17 Cyc. 29; 41 Atl. 382; 38 Ia. 533; 40 N. H. 47; *A. G. S. v. Burgess*, 119 Ala. 555. The court in its oral charge to the jury not only misplaced the burden of proof but charged upon the effect of the evidence in violation of section 5362, Code 1907.—*Ogletree v. The State*, 28 Ala. 693; *Winslow v. The State*, 76 Ala. 47.

ALEXANDER M. GARBER, Attorney General, for the State. The court did not err in empanelling the grand jury.—*Holland v. The State*, 50 South. 215. There was sufficient evidence of the corpus delicti.—*Fowler v. The State*, 100 Ala. 96. The Attorney General discusses the other objections to evidence and to the charges given and refused, but without further citation of authority.

MAYFIELD, J.—The case made by appellant is as follows: The accused was indicted, tried, and convicted for the murder of Nettie Edmonson. The indictment was found at a regular term of the Morgan county law and equity court by a grand jury organized under an order of the court based on the failure of

the jury commissioners to draw a grand jury for that term of court. Said order directed the jury commissioners to draw a sufficient number of qualified citizens to compose a grand jury, and the sheriff was therein commanded to summon the grand jury so drawn. The record shows that one Tom Edmonson and his family, consisting of his mother, 72 years of age, his wife, his daughter, Nettie Edmonson, 13 years of age, and an infant son, 2 years of age, resided in Morgan county; that the defendant lived on Edmonson's farm and cultivated his lands on shares, and had done so for several years; that he lived a short distance from Edmonson's house, and the defendant and Edmonson and his family had always been friends. On the night of November 25, 1908, Tom Edmonson's home was discovered to be on fire, and his neighbors, including the defendant, rushed to the scene. On arriving, the house and barn were discovered to be in flames, and it was impossible for any one to enter or go near to either. Search was immediately made to ascertain the whereabouts of Tom Edmonson and the different members of his family; but none of them could be located. Later in the night, and during the burning of the house, a body was seen lying within one of the rooms on a bed, with face down, and it was taken from the burning building, together with the bedding and bed. The bedding, bedtick, and feathers under the body were saturated with "fresh red blood." This body was identified to be that of Nettie Edmonson. A physician examined the body and found two wounds, one a cut or stab, in the right side of the chest; the other a gash or slight cut on or near the collar bone. The physician testified that these wounds were not fatal. No other bodies were found in the house, but a part of the body of Tom Edmonson's wife or mother, and a foot of his infant son, were found in

the barn in the cotton seed room, and also the carcasses of Tom Edmonson's three mules. Near the human bodies found in the seed room was found an open knife, identified as that of Tom Edmonson, the blade of which was corroded and stained. Extensive search failed to discover any trace of Tom Edmonson, his body, or any part thereof. The open knife identified to be that of Tom Edmonson was delivered to the physician, and the blade inserted into the wounds of Nettie Edmonson, and "the wound fit the blade of the knife," and the blade of the knife fitted the hole in the clothing of Nettie Edmonson that corresponded to the wound in her chest.

It appears that Tom Edmonson was a simple-minded man and incapable of transacting much business; that during the afternoon preceding the fire he was at his home, and was mad; that, some days or weeks after the fire, blood was found in and about the home of the defendant, and also out near the graveyard, some distance from Tom Edmonson's house and that of defendant. A coroner's jury was held at the home of the defendant the day following the fire, which a great number of people attended. At this investigation no blood was seen, at any of these various places about defendant's, as was found many days or weeks afterwards. The day after the fire, parties were searching in almost every direction from the Edmonson home, and in and around the graveyard. The burial of the remains of Tom Edmonson's family occurred at this graveyard, drawing great crowds of people; but no one discovered the blood in the sedge grass, which was found thereafter, only 10 or 15 feet from the public highway. Numerous witnesses testified that the blood afterwards found was not about the premises the day after the fire. The first coroner's jury returned the

verdict that the family of Tom Edmonson had been killed by Tom Edmonson, and that he was at large, and the second coroner's jury found that the family came to their deaths at the hands of unknown parties.

The record discloses that defendant was alleged to have made a statement to one Gib Luker, his 13 year old nephew, on the morning before the night of the fire and broached the conversation in this manner: "1 will tell you something, if you will promise not to tell it, and I said I would not tell. He made me take 20 cents not to tell it. He then said he had killed Edmonson and his family, and for me to go to school and not tell anybody, and when he handed me the money he said not to look sad that day. I went on to school and stayed at school all day long and did not tell any one. When I left school, I came back to defendant's house the same way I had gone that morning, and when I was passing his house he came out and walked with me down the path a little piece and asked me if I had told any one, and I told him that I had not. He then said that he was going to put them all in the house and burn them up that night. That that morning, when he went up there to feed, the whole family got after him, some with sticks, some with rocks, some with knives, and he had to kill them. He said that Nettie was pretty high strung and like to have gotten away from him; that he ran her up the road to the graveyard and caught her and had a struggle with her, and she like to have gotten away. He said she was lying out in the old field up there, and that he was going to put them all in the house and set it afire and then hallow and then ring the bell. He told me to tell my father and mother when they saw the fire down there that night that they had better not come down there."

It further appears that one Harry Culbreath was at the home of Tom Edmonson at about 10 o'clock in the morning of the day just preceding the fire, and saw Tom Edmonson, his wife, and some of the other members of his family, and talked with them. Other testimony showed that the family was at home late in the afternoon, and a few hours prior to the fire.

The testimony of expert witnesses showed that the blood in the human body would coagulate in 30 minutes after death.

It appears that the defendant was, before the tragedy, a man of good character.

The defendant made a motion to quash the indictment. The five grounds of the motion presented, in varying form, but two legal propositions: (1) That the indictment was not found by a grand jury drawn in the presence of the officers designated by law; (2) that the indictment was grounded upon an order of the court for the organization of the grand jury, which order was without any warrant in the statute or was contrary to its provisions.

After the introduction of the evidence addressed to the various grounds of the motion, the court overruled the same, and the defendant excepted. The defendant also raised the same questions in the form of six pleas in abatement. Pleas 4, 5, and 6 were demurred out, and issue joined on pleas 1, 2, and 3, and the same evidence was introduced in support of the pleas as was introduced to the motion, whereupon the court gave to the jury the general affirmative charge at the request of the state, and the defendant excepted.

The objections to the indictment were grounded upon the following order of the court, made at a regular term thereof, for a grand jury for said term: "Monday morning, February 1, 1909. State of Alabama,

Morgan County. Morgan County Law and Equity Court. Be it remembered that at a regular term of the Morgan county law and equity court, begun and held for the county of Morgan, at the courthouse of said county in the city of Decatur, Ala., commencing on Monday, February 1, 1909, present and presiding the Honorable Thos. W. Wert, judge; D. F. Greene, solicitor; J. S. Fowler, clerk; and Thos. R. Shipp, sheriff of said county. The court being duly opened according to law, and the commissioners having failed to draw a grand jury for this term of the court, and the court being of the opinion that a special grand jury should convene to consider any violations of the law and to perform other duties, and the court being of the opinion that the jury commission should draw said special grand jury: It is ordered that said commission draw immediately, as is required by law, a sufficient number of qualified citizens to compose said special grand jury, and the sheriff is hereby ordered to summon same, to be and appear at the court house, Morgan county, Ala., at 10 o'clock a. m. February 8, 1909. Dated Feb. 1, 1909."

Sections 6 and 7 of the act creating the Morgan county law and equity court provide that the court shall have two regular terms each year, known as the spring and fall terms of court, the spring term to begin on the first Monday in February and end June 30th, and the fall term to begin the first Monday in September and end December 31st. The sessions of the court to be held during these *terms* are left to the discretion of the presiding judge, fixed by an order entered of record. Local Acts 1907, p. 193. Section 29 of this act undertakes to provide against any failure of the jury commissioners to perform their duty in this instance, as well as to provide against other contingencies that might

arise from other causes. It provides: "That whenever for any cause a jury, grand or petit, shall be quashed by the court *or shall fail to have been drawn or summoned,* or if drawn and summoned, shall fail to attend, the court may forthwith order the sheriff to summon from the qualified citizens of Morgan county, a jury. or juries, to serve for any time specified or ordered by the court." (Italics supplied.)

It is well recognized in this court that objection to the formation of a grand jury may be allowed in two classes of cases: (1) When not drawn in the presence of the officers designated by law; (2) when there is some *order* of the *court* or action of the *judge* appearing of record relating to the organization of the grand jury, which is contrary to or unauthorized by the statute, notwithstanding section 7572 of the Code.—*Nordan v. State,* 143 Ala. 22, 39 South. 406; *Fryer v. State,* 146 Ala. 7, 41 South. 172; *Billingslea v .State,* 68 Ala. 490; *Cross v. State,* 63 Ala. 40; *Scott v. State,* 63 .Ala. 59; *O'Byrnes v. State,* 51 Ala. 27-29; *Berry v. State,* 63 Ala. 126, 127; *Tucker v. State,* 152 Ala. 1, 44 South. 587, 588.

Section 39 of the local act above referred to, as last amended, among other things provides as follows: "That at any time during the vacation or during any regular term of said court if, in the opinion of the judge of this court, a session of the court shall be held, the judge of this court, upon making a minute entry therefor, is hereby empowered and authorized, to declare this court in session for such purpose or purposes, that he may deem proper, and the judge of said court be and he is hereby authorized to order a grand jury summoned and impaneled to consider matters that may come before it, and which said grand jury may be summoned immediately and in whatsoever manner

the judge may direct in said minute entry. * * *"  Gen. Acts 1907, p. 633.

The indictment was found at a regular term of the court, and not at a special or adjourned term; and, consequently, sections 7260 and 7261, nor 3249, Code 1907, do not apply.  It has been held by this court that there is a field of operation for each of these statutes (*Holland's Case*, 162 Ala. 5, 50 South. 215); but this case is not within the scope of any one of the three; it falls within the scope of section 7275 of the Code, . which requires the judge to draw the grand jurors from the jury box when no grand jury has been drawn or, from any other cause, none is returned for service for any term of the court.  The law requiring the judge to draw the jury, he would have no authority in this case to order the commissioners to draw it. But the local statute under which this grand jury was organized authorizes the judge "to order a grand jury summoned and impaneled * * * in whatever manner he may direct in the minute entry."  This, of course, authorized the proceedings by which the grand jury was drawn, summoned, and organized.

Section 7572 of the Code is as follows:  "No objection can be taken to an indictment, by plea in abatement, or otherwise, on the ground that any member of the grand jury was not legally qualified, or that the grand jurors were not legally drawn or summoned, or on any other ground going to the formation of the grand jury, except that the jurors were not drawn in the presence of the officers designated by law; and neither this objection nor any other can be taken to the formation of a special grand jury summoned by the direction of the court."

It therefore clearly appears that the grand jury in this case was drawn by the jury commissioners of Mor-

gan county, who were the persons designated by law to perform this duty, and that the order of the judge or court relating to the organization of the grand jury was authorized by the local statute—the only two grounds available to quash the indictment. It therefore follows that the indictment was good, and unassailable by motion to quash or by pleas in abatement on the grounds alleged. It was the evident purpose of the local statute above to authorize the judge or court to direct, by minute entry, how the grand jury should be drawn, summoned, and organized. To this extent it is different from the general law.

During the rebuttal examination of one of the state's witnesses, the solicitor propounded to the witness the following question: "Detail what Rufe Luker said to you when he came to you to swear out the warrant for the arrest of the defendant." The defendant objected to the question, assigning proper grounds but the court overruled his objection and allowed the witness to answer. He answered as follows: "Rufe said: 'come out here! I've, or you've, got to arrest Bob Clemmons, and do it now.' He said that Bob had threatened to kill him and his boy Gib, and I asked him why, and he said that the defendant had told him and his boy that he had killed Tom Edmonson and his whole family and had put them in the house and barn and burned them up." The defendant then moved to exclude the answer, upon the same grounds assigned to the question but the court overruled his motion, to which actions of the court as to the question and the answer the defendant duly excepted. This would clearly be reversible error, but for the recital in the bill of exceptions that the defendant had brought out a part of this conversation on cross-examination. If this was

true (and we must so treat it, to support the ruling of the court), it was not error, but was proper.

The defendant, in order to rebut or disprove the testimony of the witness Luker and his son, who testified as to confessions made by the defendant on the morning of the day preceding the night of the fire—when the dead bodies, in which at that time the blood was warm, were found in the burning houses—offered physicians and surgeons as experts to prove that blood would congulate and cease to flow in the human body from one-half to an hour after death. To rebut this evidence of the experts, the state introduced a witness, one W. E. Tucker, who was shown not to be a practicing physician or surgeon, and to have no scientific knowledge on the subject, but who was shown to have had some experience as to the flow of blood from two dead bodies; and he was allowed by the court, over defendant's objections and exceptions, to relate his experience as to the time within which, after death, blood flowed from those two bodies, and to give his opinion that blood in the human body would not coagulate in one-half to an hour after death. This was clearly error. The first question sought to introduce a species of comparisons or experiment, as to the flow of blood from dead bodies, which was unwarranted by the law or rules of evidence. The conditions of the bodies in the two cases as to which the witness testified, and the manner in which death was inflicted in those cases, were so entirely different from the conditions and mode of death in the case at bar that it would be dangerous to allow such comparisons.— Mayfield's Dig vol. 5, p. 404, subd. 50; volume 1, p. 340. The matter being inquired about, viz., the time in which the blood would coagulate and cease to flow in dead bodies, was certainly the subject of expert evidence, and not within the common knowledge of the

court or the jury. The witness was not shown to be qualified to give his opinion as an expert on this subject. The mere fact that he had seen blood flow from two dead bodies, on prior occasions, did not render him competent as an expert on this subject. To authorize a witness to give an opinion as an expert, it must appear that, by study, practice, experience, or observation as to the particular subject, he has acquired a knowledge beyond that of ordinary witnesses; otherwise, he would not be an expert and his knowledge, skill, or experience is not considered sufficient to inform the court or to guide the jury in reaching a correct conclusion upon the subject of inquiry.—Wigmore on Ev. § 556; *Mobile Co. v. Walker,* 58 Ala. 290; *Commonwealth v. Farrell,* 187 Pa. 408, 41 Atl. 382; *Kilbourne et al. v. Jennings et al.,* 38 Iowa, 533; *Burgess' Case,* 119 Ala. 669, 24 South. 727. Evidence like this was condemned by this court in the case of *Rash v. State,* 61 Ala. 89, in which case it was held that one who had been in the late war, and had observed the range of balls, in many gunshot wounds, but who was not a physician, a surgeon, or an expert, was not qualified to testify as to the range of the balls in some of the wounds which he had so observed, but that a physician or surgeon with experience as to such wounds was an expert, and could give his opinion as to how the wounds were inflicted upon deceased, in a homicide trial.

As a part of the oral charge of the court, the jury were instructed as follows: "It is not on the defendant to prove that some one else committed the crime; but it is upon him, after the state has shown a prima facie case, to establish his innocence." To this part of the charge the defendant excepted. This much was error. It is not upon the accused to establish his innocence, when the

[Clemons v. Tħe State.]

state has shown a prima facie case of guilt. The vice of the instruction is that it improperly places, and shifts, the burden of proof in criminal cases. It would be correct in a civil suit, but not in a criminal trial.

This court has ruled as follows upon these questions: The burden of proof is always upon the state, and is never shifted upon the defendant, except as to special defenses provided by statute, such as insanity, former conviction, etc.—*Wharton v. State,* 73 Ala. 366; *Whitten v. State,* 115 Ala. 72, 22 South. 483; *Martin's Case,* 119 Ala. 1, 25 South. 255. Under an indictment for an assault with intent to murder, the burden of proving the alleged intent, as well as the other facts which constitute the felony, is on the state; and a charge which selects a portion only of the facts disclosed by the testimony, and instructs the jury that, if these facts are proved, "the law presumes that the act was malicious," and that the defendant "intended to kill," is erroneous, because it shifts the burden of proof, and loses sight of the recognized distinction between civil and criminal cases in the measure of proof. Nor is the error cured by further instructing them, in a subsequent portion of the charge, that these presumptions of law only arise in the absence of evidence tending to quality or explain the selected facts, and may be rebutted, qualified, or explained away by the evidence; "so that, if they find the facts upon which these presumptions of law arise, with other evidence tending to qualify or explain them, it will be their duty to consider all the evidence in connection, and if, upon the whole evidence, they entertained a reasonable doubt, they should acquit the defendant."—*Ogletree v. State,* 28 Ala. 693. Strictly speaking, the burden of proof is never on the defendant to establish his innocence, or to disprove the facts necessary to establish the crime for which he is charged. In all

criminal cases, if the evidence, any or all of it, raises in the mind of the jury a reasonable doubt as to his guilt, he should be acquitted.—*Henson's Case,* 112 Ala. 41, 21 South. 79; *Whitten's Case,* 115 Ala. 72, 22 South. 483. See *Howard's Case,* 110 Ala. 92, 20 South. 365. The rule at one time prevailed in this state that the burden of proof was on the defendant to satisfy the jury that he was incapable of forming specific intent (*Fonville's Case,* 91 Ala. 39, 8 South. 688); but the present rule is that, if from all the evidence the jury have a reasonable doubt of the defendant's guilt, he is entitled to an acquittal.—*Whitten v. State,* 115 Ala. 72, 22 South. 483. It is error to instruct the jury, in a criminal case, that, if the proof left the question of the defendant's guilt or innocence in equipoise, they could not, on that account alone, acquit. *Winter & Scisson v. State,* 20 Ala. 39.

The court, among other things, and as a part of the oral charge, also instructed the jury as follows: "I charge you as a matter of law that the corpus delicti has been proven in this case, provided you believe the evidence." This was also error to reverse. It was certainly a charge upon the effect of the evidence, and in violation of section 5362 of the Code. It was likewise an invasion of the province of the jury. While there was sufficient evidence in the case as to the proof of the corpus delicti, if the jury so found, to support a conviction, and to authorize the admission of evidence as to confessions by the defendant, yet the sufficiency thereof was a question for the jury, and not for the court. This court, in *Winslow's Case,* 76 Ala. 47, spoke on this subject as follows: "We cannot assent to the proposition insisted on that the sufficiency of the proof of the corpus delicti is a question for the court, and not for the jury. Greenleaf * * * observes: 'The proof

of the charge in criminal causes involves the proof of
two distinct propositions: First, that the act itself
was done; and, secondly, that it was done by the person
charged, and by none other—in other words, proof of
the corpus delicti, and of the *identity of the prisoner.'*
The ascertainment that an offense has been committed
is as essential to conviction as that the defendant is
the guilty agent. Both of these essential propositions
are for the determination of the jury, and both must be
proved beyond a reasonable doubt. To hold that the
court must decide ultimately either of these proposi-
tions would be tantamount to a denial of the constitu-
tional right of trial by jury."

The court, also as a part of its oral charge, instruct-
ed the jury that the alleged confession of the accused
was voluntary, provided they believed the evidence. This
was likewise a charge upon the effect of the evidence
and an invasion of the province of the jury. Immedi-
ately following this expression as to the confession's
being voluntary, the trial court instructed the jury as
follows: "And if you believe these confession of the
defendant, and the other evidence in the case, the de-
fendant is guilty." This was error, for the same rea-
sons assigned to the other parts of the oral charge, and
for the further reason that it would have been improper
if requested by the state. The evidence was in conflict
as to material ingredients of the offense, and palpably
so, as to the accused's being the guilty party. If the
evidence of the defendant was true, he was not guilty,
and the jury had the right to believe him.

The evidence being thus in conflict, and much of it
resting in inference, the affirmative charge could not be
given, even with the usual hypothesis—"if requested."
Upon this question this court has spoken as follows:
"In the absence of conflicting testimony to the fact of

guilt, a charge affirmative of guilt predicated upon a belief of the testimony by the jury may be given, though this court has reiterated that such a charge is of doubtful propriety against a defendant in a criminal case, and should never be given where there is any evidence upon which a verdict of acquittal could be based, or where the facts in evidence pointing to guilt rest in inference only."—*Taylor v. State*, 121 Ala. 25, 25 South. 689.

The judgment is reversed, and the cause is remanded. Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.