16 So.2d 183

**DESILVEY v. STATE.**

1 Div. 206.

Supreme Court of Alabama.

Dec. 16, 1943.

Rehearing Denied Jan. 13, 1944.

H. E. Smith, of Bay Minette, and W. C. Taylor, of Mobile, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen, for the State.

**GARDNER, Chief Justice.**

The appeal is from a conviction of murder in the first degree with infliction of the death penalty.

Defendant is charged with the murder of one Ruby Sims, who had been informally adopted by the defendant and his wife (a childless couple) as a member of the family when she was something over nine years of age. At the time of this alleged crime she was fourteen. Defendant's conviction rests wholly upon circumstantial evidence.

Of course, in every criminal prosecution the burden is on the State to prove beyond a reasonable doubt the crime charged has in fact been committed and that the accused is the person who committed it. It is well settled that circumstantial evidence may afford satisfactory proof of the corpus delicti. Winslow v. State, 76 Ala. 42.

True, the Court must first be convinced, at least prima facie, that an offense has been committed before it will consider who perpetrated the crime. As pointed out, however, in Ducett v. State, 186 Ala. 34, 65 So. 351, this does not mean that the fact that a crime has been committed should be shown by evidence wholly independent of the relation of the accused to the offense charged. The evidence that defendant committed the crime may be so inextricably blended with proof of the corpus delicti as to make a separation impossible. As to whether or not a prima facie case of the corpus delicti has been made to appear depends, of course, upon the facts of each particular case.

Defendant, a veteran of World War I, while overseas in 1920 met and married a Belgian woman, who is now known as Lucy Desilvey. She is uneducated and unable to read or write English. They came to this country, living at different times in Biloxi, Mississippi, and Mobile, Alabama. They adopted a girl when quite small named Theresa. Theresa is grown and married, but was a member of the family, living with defendant and his wife and Ruby Sims at the time here involved.

As a motive for the crime, it may be here added that, while in Mississippi, Ruby had charged the defendant with the commission on her of the crime against nature, and he had been indicted for that offense. Defendant had stated that if the two girls were out of the State of Mississippi, the charge against him would be dropped. Of course, it is clear enough that this was competent evidence to show motive. Hodge v. State, 97 Ala. 37, 12 So. 164, 38 Am.St.Rep. 145.

In April, 1942, defendant with his wife and a little boy drove his car from Biloxi, Mississippi, to Mobile where Ruby and Theresa joined them. He then drove to the hotel at Bay Minette, and left all there except Ruby. He left the hotel about 8 a. m. in the car with Ruby, ostensibly to carry her to the home of one Clara Booth, who lived at Huxford in Escambia County, and was to return and carry the others to the home of his niece, Lillian Colbert. He did return in a few hours, and stated that he first had motor trouble and later, while delayed with a flat tire, Ruby hailed a passing truck and went off on it. Later the same day (about noon) the members of the party went to Lillian Colbert's. We may add in this connection that the testimony of Clara Booth is to be interpreted as showing that she did not anticipate any such visit; that Ruby had never visited her before, nor had the defendant been there with her; and they did not come to her house on that day. At Lillian Colbert's defendant inquired if Ruby had been there.

Lillian Colbert reported Ruby's disappearance shortly after this visit. No inquiry appears to have been made of Clara Booth, either by the defendant or anyone else. The only testimony tending to show Ruby has since been seen or heard from is that of the defendant himself, who states he thought he saw her on a street car with a soldier in New Orleans. He claimed, also, to have reported her disappearance to the Chief of Police of Mobile, or some authority there without result. His testimony is further to the effect that Ruby had run away from their home on two other occasions. On the same day of Ruby's disappearance and the defendant's visit to Lillian Colbert's he stated to the two girls, in the presence of Lillian Colbert, that if Ruby came back, there were her clothes (which he had in a pasteboard box), and if she didn't come back, the girls could divide them between themselves.

Late in November, 1942, following Ruby's disappearance the previous April,

one Kilcrease, while out hunting in the woods, found a skeleton of a human being off some distance from a very dim road which led to the edge of a swamp, and in the underbrush. He found the skull, rib, leg, and pelvis bones; a white shoe with open toe; a part of a green coat; the pocket of a red sweater; and some woman's hair fixed in a hoop-like curl, with bobby pins still intact. The hair was brown, but the evidence is that it was slightly darker than Ruby's hair. There were two parts of cloth large enough to indicate they formed a part of a green coat. When Ruby left the hotel at Bay Minette with the defendant, ostensibly to go to Clara Booth's, she wore a green coat which corresponded with the cloth found with this skeleton, and a red sweater which bore much correspondence to the pocket of a red sweater found at the same place. She also had on white shoes open at the toe. A black shoe belonging to Ruby was in the box of clothes defendant brought to Lillian Colbert's, and this shoe was offered in evidence by the State for a comparison by the jury with the shoe found at the place where the human bones were located.

Shortly after the discovery of this skeleton and these articles, a search was begun by the Sheriff's office for the defendant; and in the early part of December he was arrested in Ogden, Utah, a little over two thousand miles away. Being brought back to Baldwin County, he told the officer that he had not been in Baldwin County for a period of 18 months. While the defendant insists that he went to Ogden as a mere change of work, yet we think the jury could well infer and consider this testimony as evidence of flight. Pruitt v. State, 232 Ala. 421, 168 So. 149. And after his incarceration in the Baldwin County jail he made his escape, but was promptly recaptured. This, too, was of course competent proof for the jury's consideration on the question of flight. Jones v. State, 174 Ala. 85, 57 So. 36.

The State offered the testimony of one Nelson Grubbs, who has been in the employ of the State of Alabama as a toxicologist with headquarters at Auburn for a period of four and a half years. He had studied under a number of those engaged in that character of work, and has made many investigations of death, and as a part of his training he made a study of the human anatomy. He was readily able to discern that the skeleton, of course, was that of a human being, and he testified to the approximate height of the person; and from the size of the skull and underjaw and the bones, reached the conclusion that it was the skeleton of a young person, though he was unable to fix any definite age. Counsel for defendant insist that the proof did not show sufficient qualification for him to testify as to these matters, and the court overruled objections interposed. Whether a witness is shown to possess requisite qualifications is a preliminary question largely within the discretion of the trial court. Ex parte Barlew, 181 Ala. 88, 61 So. 912, cited in Wilson v. State, 243 Ala. 671, 11 So.2d 568. We are unwilling to hold in this case that the trial court abused its discretion in permitting this witness to testify to these facts.

The skull also indicated slightly protruding teeth, and enlarged camera pictures of Ruby were offered in evidence from which the jury could infer slightly protruding teeth; and these pictures also show white shoes with open toe worn by her at the time the pictures were taken. These photographs, shedding some light upon a material inquiry in the case, were properly admitted. Grissett v. State, 241 Ala. 343, 2 So.2d 399; Wilson v. State, supra.

The argument of counsel for defendant is largely addressed to the insufficiency of the proof to show the corpus delicti. As we have indicated, the corpus delicti is a fact, proof of which may be made by circumstantial evidence. If there is a reasonable inference, deducible from the evidence of its existence, the court should submit the question of the sufficiency and weight of the evidence tending to support that inference for the jury's consideration. We are persuaded from a consideration of the evidence offered by the State, a broad outline of which hereinabove appears, that the jury could reasonably infer that the parts of the skeleton found in the woods was that of Ruby Sims, and that she came to her death by the hands of this defendant. McDowell v. State, 238 Ala. 101, 189 So. 183; Hill v. State, 207 Ala. 444, 93 So. 460; Ducett v. State, supra; State v. Williams, 46 Or. 287, 80 P. 655; Lee v. State, 96 Fla. 59, 117 So. 699.

The case, as we view it, presents no difficulty from the standpoint of legal questions that are raised. The question of difficulty, however, arises upon a consideration of the action of the court in denying

the motion for a new trial based upon the theory that the verdict was not sufficiently supported by the proof. The trial court, as well as the jury, had much the advantage in this particular case. They had before them, not only the defendant himself and the witnesses testifying in the cause, but the pieces of clothing, including the shoe found at the place where the skeleton was located.

The examination of the defendant's wife by the State was in the line of legitimate cross-examination, and elicited harmful proof against the defendant in contradiction of her previous testimony on direct examination that he had always been good to her and the girls. This cross-examination disclosed the opposite, and that in fact defendant might be classed as a sexual pervert, and that she and the girls were afraid of him. That this had its weight with the jury cannot be questioned. Nevertheless, it was legitimate proof properly elicited on cross-examination of the defendant's witness.

We recognize the rule that courts should bear in mind the probable deficiencies that inhere in circumstantial evidence, and that if it merely arouses suspicion it is insufficient. Jordan v. State, 229 Ala. 415, 157 So. 485. As observed in Ex parte Acree, 63 Ala. 234: "The humane provisions of the law are that a prisoner charged with a felony should not be convicted on circumstantial evidence unless it shows by a full measure of proof that the defendant is guilty." And though we are in accord with the current of authority that circumstantial evidence, forming the basis of conviction, should be acted on with great caution (16 C.J. 763; 23 C.J.S., Criminal Law, § 907; Gunn v. State, 24 Ala.App. 494, 136 So. 870), yet it must be conceded that a well connected train of circumstances may be as cogent of the existence of a fact as any array of direct evidence. 16 C.J. 763; 23 C.J.S., Criminal Law, § 907.

The Court has given careful consideration and examination to the evidence in this case in consultation, and after carefully viewing all the circumstances in connection with the disclosed motive, the evidence of flight, and the defendant's inconsistent conduct and statements, the conclusion has been reached that this Court would not be justified in pronouncing the verdict palpably wrong and unjust. We

are unwilling, therefore, to declare the action of the trial court in denying the motion for a new trial error to reverse. Caldwell v. State, 203 Ala. 412, 84 So. 272; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

All the Justices concur in this opinion except Justices FOSTER and LIVINGSTON, who entertain the view that the motion for a new trial should be granted, and that the judgment should be reversed upon this ground.

Duly mindful of our duty in cases of this character, the record has been examined for any error, whether pressed upon our attention by counsel or not. We find, however, that defendant's counsel have argued all questions calling for serious treatment.

It results that we find no error to reverse, and that the judgment of the court below should be affirmed. It is so ordered, and the date of the execution of the sentence of the court is hereby fixed at Friday, the 18th day of February, 1944.

Affirmed.

THOMAS, BOULDIN, BROWN, and STAKELY, JJ., concur.

FOSTER and LIVINGSTON, JJ., dissent as indicated.