27 So.2d 811

## KOZLOWSKI v. STATE.
### 7 Div. 817.

Court of Appeals of Alabama.
May 21, 1946.

Affirmed on Mandate Nov. 12, 1946.

Rehearing Denied June 25, 1946.

Beddow, Ray & Jones, of Birmingham, for appellant.

Wm. N. McQueen, Atty. Gen., and Mac-Donald Gallion, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant James Zigsmund Kozlowski was tried on an indictment charging him with murder in the first degree of his wife Willodeen Kozlowski. The jury found him guilty of manslaughter in the first degree and fixed his punishment at imprisonment in the penitentiary for ten years.

Kozlowski spent his early life in New Jersey. After completing the eighth grade in school he led a peripatetic existence, working on a farm for his keep, in a sawmill, and in a snuff mill. In 1937 or 1938 he enlisted in the United States Army, and was stationed in the Panama Canal Zone. Through a fellow soldier he initiated a correspondence with a young lady in Tennessee. She later became his wife and the victim of the tragedy about which this case centers. Kozlowski was discharged from the army after about six months service, he alleges because of "nervousness" resulting from tropical duty. Thereafter he returned to New Jersey and after about two years came to Tennessee and met the young lady with whom he had corresponded. After several months they were married and established their own home, Mrs. Kozlowski being employed as a school teacher at the time. Appellant alleges he was unable to find work and a few months after his marriage he enlisted in the Canadian Army. He alleges Mrs. Kozlowski received $79 per month as an allotment during his Canadian Army service. However after a few months Kozlowski was discharged from the Canadian Army, the reason for his discharge not being clear, though on cross-examination he would not deny that it was because he was found drunk on duty. Thereafter he and his wife lived in New Jersey for about a year, appellant being employed during this time. From there they moved eventually to Sylacauga where appellant was employed in the powder plant.

The evidence introduced by the State was to the effect that on May 18, 1945 Mrs. Kozlowski had engaged Sara Jane Williams, a neighboring girl, to stay with their two young children while she and Kozlowski went to Birmingham during the afternoon and part of the night. When Miss Williams arrived she was told that the Kozlowskis had altered their plans and had decided to go fishing. Kozlowski went into the kitchen and mixed some dough balls for bait, and Mrs. Kozlowski changed from her dress into slacks.

L. V. Rudd, a bus driver, testified they rode his bus to the powder plant, and that during the ride he heard Mrs. Kozlowski insist that they return to Sylacauga. However, at the end of the line Mrs. Kozlowski followed Kozlowski out of the bus. To get to the Coosa river it would be necessary to transfer to the river bus at this point.

Rudy Burks, owner of a fishing camp on the Coosa river, testified that the Kozlowskis arrived at his camp around 6 p. m. Kozlowski wanted to rent a boat and he gave him the keys to three boats with the understanding that Kozlowski would return the keys after selecting a boat. Kozlowski did not return the keys, and he next saw him around midnight when Kozlowski returned to his place accompanied by James Abbott. At this time Kozlowski gave Burks a dollar bill to pay for some telephone calls he or Abbott was making. This dollar bill was wet. Kozlowski's trousers were wet, but this witness could not say whether Kozlowski's shirt was wet

as it was of a kind that "it would have been hard to detect whether it was wet, or dry."

Pearl Hampton, a colored woman, was fishing on the river bank near the boat landing. She saw a man and woman enter a boat late in the afternoon, the woman extending her hand and being helped into the boat by the man. She saw the couple paddle off down the river, and when they reached a point opposite her the man laid the paddle down and picked up a small brown sack. She could not see what he got out of the sack, and the last she saw of them the boat was floating on down the river. Shortly after this a thunder storm came up and she went home. The storm was severe, but she did not know how long it lasted.

Dyneamer Chancellor, a colored boy also fishing on the bank at this time, saw this couple in the boat. The last he saw of them the man was fishing with a hand line, the woman sitting with her face in her hands. After this the storm came and his mother called him home.

Fred Aubrey testified that appellant came to the convict camp on the Coosa river, where he was employed, between 8:30 and 9 p. m. on the night of the tragedy and requested help. Appellant told Aubrey that his wife was in the river and he needed help. Aubrey said Kozlowski told him "there was a clap of thunder came and she ran towards him and threw them out into the river and turned over the boat." Appellant's shirt which was a sport shirt of thin material, "looked like a man that had been running and had sweated a little bit," though the sleeves "would kind of stick out." Aubrey called the police at Childersburg and then took appellant to the home of Louis D. Evans. Evans in turn called a Mr. Burns and T. M. Dobbs, and these three went with appellant to the river.

A number of other persons also gathered on the river bank on hearing of the tragedy. Without detailing their testimony we think a fair summary of their evidence was that Kozlowski was confused as to the exact location of the place where he alleged his wife had fallen in the river. He could not locate the willow tree to which he had tied the boat when he returned to the bank. However the evidence showed that the bank in this vicinity was lined with willow trees, all of them more or less similar in appearance. When asked where his wife went in the river Kozlowski would only reply "out there."

As to the condition of his clothes, D. H. Simmons testified that a fire had been built, the night being chilly, and that when Kozlowski warmed himself near the fire his clothes steamed from the waist down, and he saw Kozlowski light a cigarette taken from his shirt pocket.

J. T. Finn touched Kozlowski's shoulder as he staggered against him, and his shirt felt dry.

T. M. Dobbs said Kozlowski's shirt appeared dry to him.

Louis D. Evans testified that in his opinion the thunder and lightning ceased around 6:30 p. m. on the day Mrs. Kozlowski was drowned. Kozlowski and Aubrey came to his house near the convict camp between 8:30 and 9 p. m. seeking help. When he asked Kozlowski on the way to the river if his wife had drowned Kozlowski replied "I called her but I couldn't make her answer." When he asked Kozlowski if the boat had turned over or capsized Kozlowski replied, "Yes, we both fell out." After the boat had been found at the river, and Evans pointed out to Kozlowski that it had not turned over, Kozlowski replied "No * * * she got scared by the lightning and she got up and started towards him and fell out and he jumped out of the boat * * *." When this witness asked Kozlowski where his fishing poles were Kozlowski reached in his pocket and pulled out a drop line.

H. J. Adair, J. K. Davis, and James E. Elliott testified that prior to the death of Mrs. Kozlowski appellant had told them respectively that he had asked Mrs. Kozlowski for a divorce, but that she had refused his request.

■ Mrs. J. T. Lancaster and Mrs. A. L. Cottle were permitted to testify without objection that on several occasions Mrs. Kozlowski had come to each respectively, and in tears had told them that Mr. Kozlowski was going with other women, and detailed her distraught state over her marital difficulties. Appellant was not present during these conversations, and such testimony

was elementary hearsay. No objections to such testimony were interposed however, and therefore the impropriety of the admission of this testimony is not reviewable.

Mrs. D. E. Smithson, sister of Mrs. Kozlowski, testified without objection that while Mr. and Mrs. Kozlowski were living in Sylacauga Mrs. Kozlowski had told her of a night when appellant had wanted her to go for an automobile ride. Kozlowski had started for the car carrying a jar of gasoline. Mrs. Kozlowski refused to go, charging that Kozlowski intended to kill her and burn her body. About two weeks after Mrs. Kozlowski had drowned Mrs. Smithson and Mr. Smithson had asked appellant about this instance, and why he carried the gasoline to the car. Kozlowski according to Mrs. Smithson would only reply, "Well I just put it there." Mrs. Smithson had gone to the Kozlowski's house the night of her sister's death, and while there had washed the clothes Kozlowski had worn on the river trip. She said she found his trousers and shorts dingy from muddy water, but his shirt was dry from the waist up.

There was also evidence that about a year prior to his wife's death Kozlowski had taken out a $500 life insurance policy on his wife with himself as beneficiary, the policy to pay double indemnity in case of accidental death of Mrs. Kozlowski.

J. M. Rash, an expert connected with the State Department of Toxicology, performed an autopsy upon the body of Mrs. Kozlowski after its recovery from the river three days after the drowning. He found no signs of violence on the body, no evidence of poisoning, and in his opinion her death resulted from drowning.

Statements by Kozlowski concerning the drowning of his wife made to W. A. Ballow, State Highway Patrolman, and Earl Howell, Deputy Sheriff of Talladega County, were related by these two witnesses, the voluntariness of such statements having been first established. The account given to each officer was substantially the same and was to the effect that on the return trip Kozlowski was paddling the boat in the front end. A sudden clap of thunder and flash of lightning frightened his wife and she rushed towards him from the opposite end of the boat; that his wife grabbed at him or fell against him and that she fell into the river on one side of the boat and he on the other; that he climbed back into the boat, and saw his wife's hand and head rise about 12 feet downstream; he dived or jumped into the river, but was unable to reach his wife or perfect a rescue; he regained the boat, and came to an overhanging willow on the bank and tied the boat there.

We have not attempted to summarize the evidence in the order in which it is presented. In fact the very first witness presented by the State was Mr. J. C. White. Mr. White has lived near the Coosa river for seven years and during that time spent much time on it. Also during this period he has assisted in recovering two bodies from that portion of the river which was the scene of the drowning in this case. No information is supplied by his testimony as to the type of bodies he assisted in recovering from the river, that is whether male or female, adult or child. Mr. White assisted in the search for Mrs. Kozlowski's body and it was he who located her body on the third day after the drowning about a mile below where Kozlowski had tied the boat to the willow tree on his return to land. White testified at length as to his familiarity with the currents and flow of the Coosa river in the area of the Kozlowski drowning. He also stated that on the day of this drowning the river was about four feet high and pretty swift.

This testimony was apparently in an effort to qualify White as an expert witness for thereafter he was permitted, over the objection of appellant, to give his opinion in answer to the following hypothetical question:

"Q. Now, assuming that the body fell into the water sixty feet from the bank of the water's edge there that you have described, in your judgment, how far down the river, in your judgment, would it go before it would come back to the bank? A. Well, I don't think it would go to the bank; I think if the body had been out as much as sixty feet from the bank it would have gone a mile below the second island, which was a little better than a mile from where she was drowned."

In his following testimony witness said this position would have been a little better than two miles from where the boat was found tied to the willow trees, rather than one mile distance where his testimony reveals he found Mrs. Kozlowski's body floating near the bank of the river on the Talladega County side. There was also testimony that there were large boulders and rocks in the bed of the river in this area.

For the defense Mrs. Martha Benson, sister of the appellant, testified that she had known Mrs. Kozlowski during the year the Kozlowskis resided in New Jersey. Mrs. Kozlowski was a nervous woman and was particularly frightened by storms. During storms Mrs. Kozlowski, if alone, would always seek company.

Mr. and Mrs. Gaither Jones, neighbors of the Kozlowskis in Sylacauga, testified that to their knowledge the Kozlowskis seemed to get along well together.

D. A. Burton assisted in the efforts to recover Mrs. Kozlowski's body on the night she was drowned. At one time on that night he and appellant went out on the river in a boat in an attempt to locate the spot where Mrs. Kozlowski went into the river. However the current was so swift the boat was unmanageable and they abandoned their efforts. This witness testified that Kozlowski's shirt was wet, and further that when Kozlowski attempted to light a cigarette which he had taken from a pack in his shirt pocket the cigarette was "dripping wet."

The appellant testified at great length, particularly on cross-examination. His version of the manner in which his wife met her death was substantially the same as the account given to the highway patrolman and deputy sheriff, and set out above.

As to the testimony of Mrs. Smithson concerning the time he carried the jar of gasoline to his car and thus aroused the suspicion of his wife the appellant said he became irritated at his wife's attitude and suspicions and refused to explain to her his purpose in carrying the jar of gasoline, which he merely intended putting in his car.

Appellant stated that it was about twenty minutes of eight by his wife's watch when they started their return trip. That when he finally reached the bank of the river after his wife had fallen in the river it was dark, and he was unfamiliar with the area, and of course shocked by the accident. As a result he wandered in one direction and then another before finally finding his way to the convict camp.

Appellant admitted he and his wife quarrelled at times, that he drank sometimes to excess, and had on occasions been guilty of philandering. He claimed however that he and his wife had gotten along well in recent months, and stoutly maintained throughout his examination that the drowning of his wife resulted from her frightened conduct after the clap of thunder and flash of lightning.

█ Counsel for appellant in his brief argues vigorously that there is no substantial evidence in this record sufficient to establish the corpus delicti, and that before any inculpatory statements of the defendant may be introduced in evidence there must be independent proof of the corpus delicti. The latter part of the above proposition of course sets forth a well founded legal doctrine. However, we do not agree with appellant's counsel that there was a failure of proof of the corpus delicti.

Competent evidence introduced by the State tended to show that this defendant had on several occasions told acquaintances that he was desirous of divorcing his wife, the deceased, but that she had consistently turned a deaf ear to such proposals; that instead of going to Birmingham for an outing as originally planned, a fishing trip was substituted, apparently against the wishes or desires of Mrs. Kozlowski; that defendant took his wife in a boat on the Coosa river, from which trip she did not return, and her body was found in the river some three days later.

█ Thus we have presented the death of a person, and a reasonable inference of defendant's agency in the production of the death, in that he was the last person with whom she was seen alive, and a motive. While it is true that motive is not indispensable and not an element of the burden of proof resting on the State, it is always a legitimate subject of inquiry,

and especially so in cases where the evidence against a defendant is circumstantial. Jones v. State, 13 Ala.App. 10, 68 So. 690, and cases therein cited. The corpus delicti may be established by circumstantial evidence, and may be shown by evidence from which only a reasonable inference that the offense has been committed may be drawn by the jury, the proved facts and circumstances being considered together. Warren v. State, ante, p. 273, 25 So.2d 51.

In our opinion the corpus delicti was sufficiently established in this case, and this being so the statements made by the defendant were properly to be considered by the jury. The statements were further admissible in that as to whether or not a prima facie case of the corpus delicti has been established depends upon the facts of each particular case, and while it is true that a court must first be convinced at least prima facie that a crime has been committed, before it will consider who did it, this does not mean that the fact that a crime has been committed should be shown by evidence wholly independent of the relation of the accused to the crime, and in certain cases, of which we think this case is one, the evidence that the defendant committed the crime may be so blended with the proof of the corpus delicti as to make the separation impossible. Ducett v. State, 186 Ala. 34, 65 So. 351; Desilvey v. State, 245 Ala. 163, 16 So.2d 183.

These statements whose admission are questioned are the accounts given by defendant to various persons as to how his wife fell or jumped from the boat, and particularly to be considered is that part of such accounts wherein defendant said he jumped or dived into the river in an effort to rescue his wife. In the light of the testimony of several witnesses for the State that defendant's clothing was wet only from the waist down when he was seen by them shortly after his wife went in the river such statements by the defendant of his alleged effort at rescue disserved his interest and tended to afford an inference of guilt on his part of the offense charged. No rule of evidence requires that declarations against interest must be of the res gestae to be admissible. Carter v. State, 205 Ala. 460, 88 So. 571, and the above-mentioned statements were competent as evidence in this case on the theory of admissions against interest. Jones v. State, supra; Robertson v. State, 23 Ala.App. 267, 125 So. 60 certiorari denied 220 Ala. 328, 125 So. 61; Morris v. State, 25 Ala.App. 175, 142 So. 685.

Of most serious import was the trial court's action in permitting the witness White to give his opinion, over the timely objection of appellant, that Mrs. Kozlowski's body would have been found a mile from where it was found assuming she fell into the river in the area that defendant alleged she fell in. To establish his qualifications as an expert it was shown that this witness has lived near the Coosa river for seven years and had spent much time thereon, and further that during this period he had assisted in recovering two bodies from the river. Whether the bodies White assisted in recovering were those of adults or children, males or females, was not shown, nor was the stage of the water or the temperature shown. It was shown that at the time of Mrs. Kozlowski's drowning the Coosa river was about four feet high, and the current was swift. In our opinion White's background fell far short of endowing him with the "requisite special knowledge, skill, experience or training" (See Rule 402, Model Code of Evidence, American Law Institute) to qualify him as an expert competent to give opinion evidence as to how far Mrs. Kozlowski's body would go before its recovery on the third day after her drowning. To authorize a witness to give an opinion as an expert, it must appear that, by study, practice, experience or observation as to the particular subject he has acquired a knowledge beyond that of ordinary witnesses; otherwise, he would not be an expert, and his knowledge, skill, or experience is not considered sufficient to inform the court or to guide the jury in reaching a correct conclusion upon the subject of inquiry. Clemons v. State, 167 Ala. 20, 52 So. 467.

Even if we assume the improbable that one could become an expert in the meanderings of a drowned human body in a swift boulder-strewn river, permitting this witness to give his opinion answer to the question propounded was additionally

erroneous in that the question failed to hypothesize several facts essential to a rational conclusion in that no consideration was given in the question to the temperature of the water, the physical state of Mrs. Kozlowski's body, etc., which we know by common knowledge would affect the casual wanderings of a dead human body in a swift stream. To permit verdicts based on such vague guesswork answers would clothe criminal proceedings with the aspects of a lottery.

That this appellant was prejudiced by White's testimony is in our opinion patent, and its admission compels a reversal of this case.

Reversed and remanded.

CARR, Judge (concurring specially).

█ I am in accord with the conclusion reached by Judge Harwood in the original opinion wherein he held that the judgment of the lower court should be reversed, but I am in discord with his finding that the general affirmative charge was not due the defendant. Briefly I will state my reasons.

The tendencies of the vital evidence are set out in the original opinion and my careful examination of the record does not disclose any testimony that could add any evidential strength to the position of the State.

When we rid the testimony of all immaterial matters and come to consider only facts that are essential, we find: The deceased voluntarily accompanied her husband—the defendant—on a fishing outing. The trip was taken in a small rowboat on the somewhat turbulent waters of the Coosa River. During the journey an electric storm came up. Appellant reported that his wife had been drowned. After search, her body was found in the stream and no evidence of violence, wounds or injury was indicated. The expert testified that drowning was the cause of death. Appellant's testimony relating to the incident was not an unreasonable or unlikely story. There was some evidence that the appellant was not entirely clear and consistent in his explanations of the occurrence and some testimony that might have a tendency to show motive for the alleged crime. My considered conclusion is that these facts rise no higher in evidential value than mere suspicion or surmise.

Some fundamental principles will be considered.

A mere scintilla of evidence will not justify a conviction in a criminal case.

"After an examination of the authorities, we have been unable to find any decision of this or any other court of last resort that has invoked the 'scintilla rule' to uphold a criminal prosecution. * * * These utterances are clearly inconsistent with the thought that a mere 'gleam,' 'glimmer,' 'spark,' 'the least particle,' the 'smallest trace'—'a scintilla'—is sufficient, in the face of the presumption of innocence, to require the court to submit the issues in a criminal case to the jury, and the scintilla rule, in this sense, does not apply to criminal prosecutions. There must be substantial evidence tending to prove all the elements of the charge." Ex parte Grimmett, 228 Ala. 1, 152 So. 263.

"The possibility that a thing may occur is not alone, under any fair, reasonable, deduction, evidence, even circumstantial, that the thing did, in fact, occur. * * * Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did so occur." Taylor v. State, 30 Ala.App. 316, 5 So.2d 117, 118.

"The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows, by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused." Ex parte Acree, 63 Ala. 234.

Circumstantial evidence that merely arouses suspicion is not sufficient upon which to base a conviction. Jordan v. State, 229 Ala. 415, 157 So. 485.

In support of his conclusions on the instant inquiry, Judge Harwood cites Ducett v. State, 186 Ala. 34, 65 So. 351, and DeSilvey v. State, 245 Ala. 163, 16 So.2d 183. In my judgment these cases differ

materially in factual similarity to the case at bar.

In the Ducett case the deceased and defendant were alone in a room when the latter received a fatal pistol wound. The physical facts strongly rebutted an act of suicide.

The evidence in the DeSilvey case discloses that the deceased and the defendant were last seen together riding in a car, ostensibly to visit a friend. The avowed purpose of the journey was not completed, nor was it anticipated by the friend. The body of the deceased was found some months later under circumstances that strongly indicated that she came to her death by foul means. In addition there was strong incriminating testimony against the defendant indicating a motive for the crime, as well as a set of circumstances incident to the fateful journey that were inconsistent with the innocence of the accused. Flight was also shown, including a trip to a northern city over two thousand miles away, and a jail break after he was incarcerated on the charge of murder.

In a well-considered opinion by Presiding Judge Bricken of this court in Hand v. State, 26 Ala.App. 317, 159 So. 275, it was held that the general affirmative charge was due the defendant. It is my view that the circumstances in the case at bar are not as strong and cogent as the recited evidence in the opinion in the Hand case, supra.

I fully realize that where there is evidence of a substantial nature tending to establish the material elements in a criminal case, a jury question is presented. I am equally aware of the responsibility of the courts to make innocence secure even though crime may sometimes go unpunished.

"The sea of suspicion has no shore, and the court that embarks upon it is without rudder or compass."

BRICKEN, P. J., concurs in the foregoing opinion of CARR, J.

PER CURIAM.

Affirmed on authority of Kozlowski v. State, 248 Ala. 304, 27 So.2d 818.